JOHN MASON GROVE AND JOHN MASON GROVE,
BY JOHN WILLIAM GROVE, HIS NEXT FRIEND,

*vs.*

MARJORIE GROVE TAYLOR AND KENTON H.
TAYLOR, HER HUSBAND.

*Validity of Deed—Undue Influence—Mutual Incapacity.*

That a deed may be set aside by reason of undue influence,
it must be made to appear by the testimony that the influence
was strong enough to overcome the free agency of the grantor
and amount to force or fear, and that the deed was executed
while such influence was still a controlling force with the
grantor.                                                    p. 186

The law never presumes the mental incapacity of a grantor.
                                                             p. 187

In a suit by a man over eighty years of age to set aside a
deed made by him to his niece and her husband, reserving a life
estate in his favor, the grantees having left their home, at his
invitation, to come and live with him, *held* that the evidence
did not show mental incapacity on the grantor's part.

                                                    pp. 188-190

*Decided April 4th, 1923.*

Appeal from the Circuit Court for Frederick County, In
Equity (URNER, C. J., and PETER, J.).

Bill by John Mason Grove and John Mason Grove, by
John William Grove, his next friend, against Marjorie Grove
Taylor and Kenton H. Taylor, her husband. From a decree
for defendants, plaintiffs appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Arthur D. Willard,* with whom was *John L. Routzahn* on the brief, for the appellants.

*Leo Weinberg,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The record in the above entitled case presents some rather unusual features. The proceeding is one by John Mason Grove to set aside a deed of certain property in Middletown, Frederick County, which was fully described in a deed from the said John Mason Grove to Marjorie Grove Taylor and her husband, Kenton H. Taylor. The prayer of the bill asked this specific relief, and appended to that was a prayer for general relief. The grounds on which the deed was asked to be set aside were the mental incapacity of the grantor in the deed, and undue influence exerted upon the grantor by Mrs. Taylor and her husband, Mrs. Taylor being the more active agent of the two. The pleadings also set up a non-delivery of the deed by the grantor to the grantee, but the proof in the case did not substantiate this as a valid ground for relief.

While it was not specially dwelt upon in the oral argument of the case, the ground was further urged in the briefs of the counsel for the original plaintiff, who is the appellant here, that the granting clause was an absolute grant, later sought to be limited by imposing upon it a life interest in the grantor, and that when different clauses of a deed are at variance and inconsistent, the granting clause must necessarily control. That is a provision of law too familiar to be worthy of discussion, and, therefore, one of the first concerns will be a careful consideration of the deed itself for the purpose of determining how far the allegations of the brief in this respect are borne out.

In the progress of the trial in the Circuit Court of Frederick County there were many objections raised to evidence,

but this Court is not now called on to consider these aspects of the case.

The trial of the case was before two judges—URNER and WORTHINGTON—of the sixth circuit, and these two judges, after hearing the testimony and arguments of counsel, were unable to agree as to the proper decree to be entered. The record was then submitted to the third judge of the same circuit, JUDGE PETER, who, after a careful review of the pleadings and testimony, reached the conclusion that the view expressed in the opinion of JUDGE URNER was correct, and that the bill should be dismissed. It is from the decree thus dismissing the complaint that the appeal involved in this record was taken.

This narrows the issue down to two questions, namely, whether or not the deed was procured by undue influence exercised upon Mr. John Mason Grove at the time of its execution in 1920, and whether or not Mr. Grove was possessed of sufficient mental capacity at the time of the execution of the deed to make a valid deed or contract.

Both of these questions, so far as the law is concerned, are well settled in this State in quite a long list of adjudicated cases. That a deed may be set aside by reason of undue influence it must be made to appear by the testimony that the influence was strong enough to overcome the free agency of the grantor and amount to force or fear, and that the deed was executed while such influence was still a controlling force with the grantor. *Todd* v. *Grove,* 33 Md. 188; *Williams* v. *Williams,* 63 Md. 371; *Barron* v. *Reardon,* 137 Md. 308; *Dudderar* v. *Dudderar,* 116 Md. 619; *Kelly* v. *Stanton,* 141 Md. 380.

In the case of *Williams* v. *Williams, supra,* a deed was set aside, but that result was reached because of the fact of the confidential relations existing there between parent and child. In this case there is no confidential relation existing such as to throw the burden of proof upon the grantees, and it remains therefore with the parties seeking to vacate the deed

upon the ground of undue influence to establish that fact by a preponderance of the evidence, a burden which the plaintiff in this case has failed to meet. The grantor of the deed in this case was an uncle of Mrs. Taylor. Mr. Grove, who seeks to set the deed aside, was, at the time when he signed and ac-knowledged the deed, a resident of Middletown, Frederick County, while his niece, Mrs. Taylor, was a resident of Martinsburg, West Virginia.

The ground most strenuously urged for vacating this deed was the supposed mental incapacity of Mr. Grove at the time when he signed and acknowledged the deed. The case stands, therefore, in the somewhat peculiar attitude of the grantor of an instrument seeking to avoid that instrument upon the ground that he was practically an imbecile, and this appears to have been the view taken of it by JUDGE WORTHINGTON in the Frederick County Court. After the case had been begun, and for the purpose of strengthening the plaintiff's case, an additional party was made a co-plaintiff as the next friend of Mr. Grove. There is one more point to be observed before proceeding to a consideration of the testimony given.

The law never presumes the mental incapacity of a grantor. If reliance is to be placed upon that, that must be proved by a preponderance of the evidence, nor is the legal definition of the terms insane, *non compos mentis,* or imbecile, necessarily identical with the meaning ascribed to those terms by the medical profession, and especially the alienist. Of this last class there are men eminent in their profession who do not hesitate to say that they regard from forty to sixty per cent. of the human race as *non compos.* It has been recognized in this State, in several cases, that the testimony of alienists or experts, as they are sometimes called, while admissible under many circumstances, is always to be received with caution and carefully scrutinized. *Turner* v. *Rusk,* 53 Md. 71; *Berry Will case,* 93 Md. 568.

There are two classes of medical testimony offered in this case, that of certain alienists or experts who expressly declare

the view that they regarded Mr. Grove as incompetent to execute a valid deed or contract, basing their opinion upon a more or less thorough examination which they had made. As opposed to them were certain other gentlemen of the medical profession who had attended Mr. Grove, not professing to be specialists or experts in insanity, but who, in the course of their attendance on him for physical ailments, regarded him as fully competent to execute valid contractual engagements.

The experts describe him as having *senile dementia* or *paranoia,* or suffering from arterio-sclerosis, and if the last mentioned existed, that the inevitable tendency of it was to produce or extend *senile dementia.* Quite a number of other witnesses than the medical ones testified with regard to Mr. Grove's condition and in effect gave expression to appearance as to his mental capacity, though the facts enumerated by them upon which their opinions were founded fell a good deal short of what is needed in order to entitle a non-professional person to express an opinion upon the subject of mental capacity.

The facts surrounding Mr. Grove at this time were practically these: He was a man between eighty and eighty-two years of age, and apparently below the average so far as his mentality was concerned, but not to the extent that would render him in law incapable of executing a valid deed or contract. He had apparently in most of his business matters relied very greatly upon the judgment of his wife, who died on the 11th of March, 1920. They had no children, and Mr. Grove felt himself in a very lonely position. He appears to have made quite tempting offers to a number of persons, some related and some not, to come and live with him, taking care of his needs in his advancing years, but for one reason or other they all declined. After being thus refused he made an offer to his niece, Mrs. Taylor, that her husband should resign his position in Martinsburg, and that Mr. and Mrs. Taylor should come and live in his house in Middletown and he would convey the property to them, the deed to become effect-

ive in them upon the termination of a life interest, which he proposed to retain. The deed is a short one and bears both upon the question of consideration and the reservation of a life interest in the grantor. It is as follows:

"This Deed, made this 26th day of March, in the year nineteen hundred and twenty, by me, John Mason Grove, widower, of Frederick County, State of Maryland, witnesseth:

Whereas, my niece, Marjorie Grove Taylor, has agreed to move to my home in Middletown, Frederick County, Maryland, and keep said house and home in proper order and to otherwise provide for my comfort and welfare; and

Whereas, in consideration of her so doing and in further consideration of the natural love and affection I bear toward her, I have agreed to convey the hereinafter described property unto my said niece, Marjorie Grove Taylor, and Kenton H. Taylor, her husband, reserving, however, unto myself a life estate in said property, and in order to effect said purpose and carry out said agreement,

Now, therefore, this Deed witnesseth, that for and in consideration of the premises and the sum of ten dollars ($10.00) cash in hand paid at and before the execution and delivery of these presents, the receipt of which is hereby acknowledged, I, the said John Mason Grove, widower as aforesaid, do hereby grant and convey in fee simple unto Marjorie Grove Taylor and Kenton H. Taylor, her husband, all that piece or parcel of land situate, lying and being in the eastern end of Middletown, in Frederick County, Maryland, and more particularly described in a deed from Herman L. Routzahn to John Mason Grove and wife, bearing date the 16th day of January, A. D. 1917, and duly recorded among the Land Records of Frederick County in Liber No. 320, folio 138, by reference thereto will more fully and at large appear.

Together with all and singular buildings, improvements, rights, ways, privileges and appurtenances

thereunto belonging or in any wise appertaining thereto.

*Especially reserving,* however, unto myself, the said John Mason Grove, a life estate in and to the herein-before described property."

In view of the recitals in the deed preceding the granting clause, there can be no question of a conflict between the granting clause and the habendum, as the reservation of the life interest is manifestly intended to a considerable degree as a consideration for the deed.

The demeanor of Mr. Grove upon the witness stand is a curious exhibition. He contradicts himself over and over again upon matters both of importance and unimportance. One moment he evinces an inability to understand a plain, simple question, and a moment later gives a display of cunning quite remarkable and which suggests that, throughout his testimony, he was endeavoring to assume and act a part for the furtherance of this proceeding. From the testimony of other witnesses it does not appear possible that he could have been as obtuse as he seeks to impress the court that he was. For many years, in fact, since it was first organized, he had been a director of a savings bank in Frederick County, and also on the directorate of an insurance company, and had been continued in these positions year after year, as would hardly have been the case if he had been as stupid mentally as some of the witnesses tried to paint him. It is true that the filling out of checks was usually done for him by his wife or some official connected with the bank, whom he knew and had confidence in, but this fact is very far from being conclusive as to his lack of mental ability.

This Court, unfortunately, did not have the advantage which was enjoyed by the trial court of seeing Mr. Grove while he delivered his testimony, and it is noteworthy that while JUDGE URNER was satisfied in the court below of his being fully possessed of a mental power sufficient to enable

him to execute a valid deed or contract, the dissenting opinion of JUDGE WORTHINGTON does not deny that he possessed the power itself, simply that JUDGE WORTHINGTON felt that he would like to have more evidence upon the point.

There is nothing contained in the record sufficient to show that Mr. and Mrs. Taylor have not fully measured up to the requirements of the deed, and, in this condition of the evidence, when this Court does not feel that Mr. Grove has met the burden of proof imposed on him by law, the decree of JUDGE URNER and JUDGE PETER will be affirmed.

> *Decree affirmed; costs to be paid by the appellant.*