RIPPON *v.* MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, Trustee et al.

[No. 142, October Term, 1956.]

218

*Decided May 7, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*William Saxon* for the appellant.

*Norwood B. Orrick*, with whom was *Francis D. Murnaghan, Jr.*, on the brief, for the Trustee.

*Samuel J. Fisher*, with whom was *Joseph Bernstein* on the brief, for Sinai Hospital of Baltimore, Inc., and Associated Jewish Charities of Baltimore.

Submitted on brief by *J. Crossan Cooper, Jr.*, for the Johns Hopkins Hospital and the Johns Hopkins University.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by one of the respondents, Jean Pauline Rippon, from a decree of the Circuit Court No. 2 of Baltimore City, dated July 10, 1956, which declared valid the following documents: Deed of Trust dated December 29, 1938, executed by Louis and Simon Schloss; supplemental document dated April 2, 1943, executed by Louis Schloss; supplemental document dated November 25, 1946, executed by Louis Schloss; and which assumed jurisdiction over the administration and distribution of the trust created by said instruments, and the administration settlement of the estate of Louis Schloss, deceased.

During the year 1930, while three brothers, Max, Louis and Simon Schloss, kept their securities in a safe deposit box with the then Safe Deposit and Trust Company, they had meetings at various times with Mr. Marshall, who was then

the senior Vice-President of the Safe Deposit and Trust Company, and Mr. Pausch, the present senior Vice-President, in reference to the execution of a Deed of Trust between the Safe Deposit and Trust Company and the three Schloss brothers.

A few days before April 8, 1931, the aforesaid Max, Louis and Simon Schloss appeared in the office of Mr. Harry N. Baetjer, a member of the Bar of the City of Baltimore and employed Mr. Baetjer to prepare a Deed of Trust, naming the Safe Deposit and Trust Company Trustee. On April 8, 1931, the said three brothers executed the said Deed of Trust prepared by Mr. Baetjer. Mr. Baetjer did not know the said three brothers prior to April, 1931, nor had he represented them before. At the time of execution of the aforesaid Deed of Trust, Max Schloss was 73 years of age, Louis was 70 years of age, and Simon was 63 years of age.

The trusts created in said Deed of Trust were not to become effective until the death of the last survivor of the three brothers, at which time the trustee was to take possession of the trust estate. It is unnecessary here to set forth in detail the provisions of said trusts, other than to say they were revocable.

Max Schloss, the oldest of the three settlors, died in the year 1932. On August 31, 1933, about a year after the death of Max, the two surviving settlors, Louis and Simon Schloss, visited Mr. Pausch, who explained to them the tax consequences between irrevocable and revocable Deeds of Trust. The settlors did not care to make any changes in their Deed of Trust at that time. Nothing was done until 1936. In November, 1936, Mr. Baetjer suggested to the settlors that they execute an irrevocable Deed of Trust. On December 22, 1936, the two surviving settlors revoked the 1931 Deed of Trust and executed another, which was substantially the same as the earlier deed. This latter deed contained the same reservation to revoke.

On December 27, 1938, the two surviving settlors, Louis and Simon Schloss, handed over their securities and cash to the Safe Deposit and Trust Company, to be held subject to a Deed of Trust to be executed by them. In the meantime,

it was to be held subject to the order of the settlors. Two days later, on December 29, 1938, the third and last Deed of Trust was executed by the said two settlors.

On April 2, 1943, the survivor, Louis Schloss, delivered to the trustee one hundred sixty thousand dollars to hold subject to the provisions of the 1938 Deed of Trust for the four charitable beneficiaries named therein, to the exclusion of any of the other beneficiaries. On November 25, 1946, he executed a surrender of his right to veto investments to be made by the trustee. On December 27, 1954, Louis Schloss died, testate, at the age of 95 years.

Jean Pauline Rippon was made a party defendant because by Item IX of his will, Louis Schloss expressed the wish that the trustee under the Deed of Trust of December 29, 1938, would pay "any tax indebtedness" of Jean Pauline Rippon. The trustee takes the position that the attempt by will to cast her tax liabilities on the trust is ineffectual and invalid, but the point is not involved in this appeal.

The six defendants named in the trustee's complaint are Sinai Hospital of Baltimore, Incorporated, Associated Jewish Charities of Baltimore, the Johns Hopkins Hospital, the Johns Hopkins University, Mitchell Stevan, Administrator, *c.t.a.* of the Estate of Louis Schloss, deceased, and Jean Pauline Rippon. In their answers, all defendants except Mrs. Rippon expressly consented to all of the relief prayed. Mrs. Rippon resisted the Court's assumption of jurisdiction over the trusts and asked that the bill of complaint be dismissed. She is residuary beneficiary under the will of Louis Schloss; therefore, she attacks the validity and existence of the trusts to the end that the trust assets will be added to Mr. Schloss' estate and pass to her under the will.

While the amount of money involved in the trusts is very substantial, the principal thereof as of April 5, 1956, being $2,525,556.00, neither the evidence nor the argument requires that this opinion be unduly protracted, although all the contentions must be determined. The questions raised by the appellant for our decision are:

1. Did the Court err by obtaining evidence in this case before its trial?

2. Did Harry N. Baetjer, Esq., represent conflicting interests?

3. Was undue influence exerted on the settlors to create an irrevocable Deed of Trust?

4. Is the Deed of Trust, dated December 29, 1938, testamentary and void?

I

It is difficult to determine with certainty just what the appellant claims under this item. It seems, however, that she contends that the trial Judge read certain depositions taken on her behalf by her counsel before the trial, which depositions were not offered in evidence at the trial. This contention must be held to be without merit for at least two reasons. The record only discloses that the trial Judge read one of the depositions; and it further discloses that appellant's counsel knew of this fact and discussed it with the Judge, yet her counsel made no objection thereto in the trial Court. We do not ordinarily decide any point or question which does not plainly appear from the record to have been tried and decided by the trial Court. Former Rule 9, Gen. Rules of Prac. and Proc., now Rule 885 of the Maryland Rules of Procedure. In addition, this Court has frequently held that in the interest of the orderly administration of justice and to avoid useless expense to litigants, it is the policy of this Court not to reverse for harmless error, and the burden is on the appellant in all cases to show prejudice as well as error. *Sieland v. Gallo,* 194 Md. 282, 71 A. 2d 45; *Balto. Transit Co. v. Castranda,* 194 Md. 421, 71 A. 2d 442. The appellant makes no effort to show unfairness or harm, and the record fully and amply supports every finding of fact by the trial Judge; so, if we assume without deciding, the reading of the depositions by the trial Judge before the trial were error, under the above circumstances, it would not be reversible error.

II

Appellants contend Mr. Baetjer was representing conflicting interests at the time he prepared the Deed of Trust for the settlors; that he failed to inform the settlors that the provision in the Deed of Trust to "pay debts" did not include the

payment of debts during the life of the survivor; that the five-year waiting plan, mentioned below, was at the suggestion of counsel for the trustee; and that Mr. Baetjer should have advised them to obtain independent legal advice.

· The general rule is that an attorney at law, who has been retained and received the confidence of a client, is thereafter disqualified from acting for any other person adversely interested in the *same general matter,* however slight such adverse interest may be, *Derlin v. Derlin,* 142 Md. 352, 364, 121 A. 27, but this adverse interest must be in its nature and sense hostile, antagonistic and conflicting with the interest of the former client. 7 *C. J. S., Attorney and Client,* p. 823; 5 *Am. Jur., Attorneys at Law,* par. 65. And an attorney may represent two clients who desire the same result, although their interests vary in degree. *Busey v. Perkins,* 168 Md. 19, 25, 176 A. 474. The only testimony in this regard was that Mr. Baetjer was not general counsel for the Safe Deposit and Trust Company but had represented them "from time to time in various matters". See *Nat'l Finance Co. v. Abernathy* (Tex. Civ. App.), 66 S. W. 2d 358. There was no attempt to show that there was any representation of hostile, antagonistic or conflicting interests; that there was not a full disclosure of all of the facts to all of the interested parties; or that there was any unfair advantage taken of anyone. The record does not contain a shred of evidence that shows the slightest impropriety on the part of Mr. Baetjer. We consider the accusation of dual representation of conflicting interests completely unjustified and a very unfortunate act. Especially is this so when we consider the fact that neither of the settlors complained of any conflicting representation during a period of nearly sixteen years after the execution of the Deed of Trust of 1938, and the Deed of Trust is acknowledged by the last survivor in his will executed in March of 1954. In regard to the allegation that the five-year plan was suggested by Mr. Baetjer, if we assume, without deciding, this fact to be true, the only ones that could be affected thereby would be the beneficiaries under the Deed of Trust, none of whom complain. We are, therefore, unable to discover any merit in this second contention of the appellant.

The weight which should be accorded to the appellant's charges, (including that of undue influence considered under III), perhaps can best be measured by considering the following excerpts from Judge Warnken's opinion in the trial Court:

"As it is clear from the circumstances mentioned above that there is no legal or factual basis for the contentions of Mrs. Rippon, it really is unnecessary to prolong the discussion. However, some events occurred in the last few years of Mr. Schloss' life, which not only confirm the above conclusions but explain the present effort to invalidate the deed of trust.

"Louis Schloss died December 27, 1954, at the age of 95 years. About seven years before, Mrs. Rippon, who was not a graduate nurse, became his housekeeper and nurse and apparently handled or attended to his finances. The annual income from the trust estate of approximately $80,000 before income taxes, was apparently quite sufficient for his living expenses until shortly after Mrs. Rippon arrived. In February, 1952, he executed a paper appointing Mrs. Rippon his attorney-in-fact. * * *

"Mr. Louis J. Sagner, an experienced local attorney, was engaged in about January, 1954, to endeavor to solve the financial embarrassment which had beset Mr. Schloss. * * * Mr. Schloss owed, in addition to income taxes, a number of other general creditors in a fairly substantial sum. * * * The Government levied a lien for taxes and it seems that other attachments were laid in the hands of the trustee which would, of course, prevent the payment of even the income from the trust estate to Mr. Schloss. The Safe Deposit and Trust Company as trustee announced its intention to file a bill in one of the equity courts of the city to obtain directions as trustee with respect to payment of the overdue indebtedness of Mr. Schloss.

"This particular matter has a very special significance with respect to the charges made by Mrs. Rippon against validity of the deed of trust. The proceeding, if it had been instituted, would have permitted Mr. Schloss, *during his lifetime,* to raise and have decided all questions that are now raised by Mrs. Rippon with respect to the validity of the deed of trust. Mr. Schloss could have personally testified to his entire relationship with everybody, preceding and succeeding the execution of the deed of trust involved in this proceeding. There would thus probably have been no uncertainty about his knowledge or understanding of the nature or effect of the deed of trust."

We find it impossible to believe that the decedent was victimized by the interposition of a trustee.

### III

The question of whether or not undue influence was exerted upon the grantor in a deed so as to render it invalid is one of fact. There is a heavy burden to be met by one who attempts to set aside a deed or will on this ground, and this is especially so when the mental capacity of the grantor or testator is either admitted or established. The test to be applied in this class of cases has been frequently set forth by this Court, and it is: "That a deed may be set aside by reason of undue influence it must be made to appear by the testimony that the influence was strong enough to overcome the free agency of the grantor and amount to force or fear, and that the deed was executed while such influence was still a controlling force with the grantor." *Grove v. Taylor,* 143 Md. 184, 121 A. 923. And see *Drury v. King,* 182 Md. 64, 32 A. 2d 371; and *Stockslager v. Hartle,* 200 Md. 544, 92 A. 2d 363, where similar tests were applied in cases involving wills.

The relevant testimony offered by the appellant in her attempt to establish undue influence is so meagre in quantity and insubstantial in quality that it requires no detailed discussion. Judge Warnken in his opinion said: "Even with

the evidence which was taken subject to exception, the record is utterly barren of even a scintilla of evidence that Louis and Simon Schloss executed the deed of trust or any of the supplementary instruments as the result of undue influence practiced upon them, and I also find that there was no lack of knowledge, understanding or appreciation on the part of either of them as to the nature and effect thereof." Without laboring this point further, after a careful examination of the entire record we are in complete accord with this finding. The settlors were highly intelligent businessmen of decisive and unimpaired mental capacity, who manifested as early as 1931 a basic plan for the enjoyment and disposition of the bulk of their property; and this basic plan was adhered to until the time of the execution of the final instrument. They were fully aware of what they wanted to accomplish, and their aims and desires were carried out in the instruments declared valid by the trial Court.

What we have said above in regard to Mr. Baetjer applies equally to Mr. Pausch. The evidence fails to disclose that he exerted, or attempted to exert, the slightest undue influence upon anyone, or that he did anything improper or unethical in any manner or form.

## IV

It now becomes necessary to set forth some of the provisions of the Deed of Trust of December 29, 1938, to determine whether it was testamentary in nature and void because not executed with the formality of a will. Under this Deed of Trust, the two surviving brothers turned over to the trustee certain listed securities and cash, which were jointly owned. The net income was to be paid to the two brothers during their joint lives, and to the survivor during his life. Upon the death of the survivor, the trustee was to pay unto certain individuals, if living, and unto certain named charities various sums of money. The balance of the trust estate was to be held for five years, and then it was to be distributed in certain proportions to four of the original defendants. The net income during this five year period was to be paid to the same four beneficiaries in the same proportions as the principal.

There was a reservation of the right to add to the trust, and it was declared to be irrevocable.

It contained a section that provided that upon the death of either of the brothers, the trustee should pay:

(a) All debts of the one so dying, his funeral expenses and the expense of inscribing his name on the family tombstone, and the cost of a marker for his grave, and the cost of having the family grave lot put in "perpetual care". (This last is directed to be paid after the death of the survivor, but is listed here for convenience.)

(b) And all taxes of every nature or kind payable by the "one so dying or on or by his or this estate or which shall be payable by any person by reason of his death and the participation of such person in the estate created by the trust."

The Deed of Trust also contained a provision that the anticipated investments or changes in investments would be submitted to the settlors, and no investment or change in investment would be made if objected to by the settlors, or the survivor. In 1946, after the death of Simon, Louis Schloss surrendered all right of any control over investments.

From the above, the appellant argues the Deed of Trust contained all the elements of a testamentary document, except its execution, and that therefore it was an attempted testamentary disposition, but as it failed in proper execution, it was, and is, invalid and of no effect.

Appellant contends that the general provision of the trust, to-wit, the payment of the income therefrom to the grantors during their lives and thereafter the distribution of the corpus to named beneficiaries, was in itself testamentary. But, this argument loses sight of the fact that the legal title to the securities and cash was transferred to the trustee, and the reserved beneficial life estates and the created beneficial remainder interests of the various named beneficiaries became present immediate interests. This arrangement has been recognized for many years in Maryland as a proper method of creating a valid trust. *Brown v. Mercantile Tr. Co.*, 87 Md.

377, 40 A. 256; *Brown v. Fidelity Tr. Co.,* 126 Md. 175, 94 A. 523; *Price v. Price,* 162 Md. 656, 161 A. 2.

We shall now revert to (a) and (b) above. Does the requirement that the trustee pay the items therein mentioned render the Deed of Trust testamentary in character? We shall consider them under separate headings.

## FUNERAL EXPENSES, ETC.

That the direction to pay funeral expenses does not make the instrument testamentary in character seems definitely to have been settled in this State in the cases of *Brown v. Fidelity Tr. Co., supra,* and *Bierau v. Bohemian, etc., Ass'n,* 205 Md. 456, 109 A. 2d 120. The same rule applies to the provision which required the family grave lot to be put in "perpetual care".

## DEBTS

With the present state of the law throughout the United States, and with the adjudicated decisions of this Court the requirement of the payment of "all debts of the one so dying" presents little difficulty. This provision gave the settlors the right to contract debts which would be chargeable against the trust fund. At most, this would amount to a right to deplete the corpus passing at the time of death. This is insufficient to invalidate the trust. This Court, in the case of *Curley v. Wolf,* 173 Md. 393, 397, 196 A. 285, quoted with approval the following: "Trusts may be created by will or *inter vivos* with the power in the trustee to pay and a right in the *cestui que trust* to receive, not merely the income but the principal of the fund, as needed or called for." In the recent case of *Bierau v. Bohemian, etc., Ass'n, supra,* which dealt with a trust created as to a free share account in a building association, Judge Hammond, for the Court, said: "* * * its (the trust's) terms were that the trustee could expend funds on hand for Filip's (the settlor's) just debts and necessary expenses during his lifetime and pay his funeral expenses at his death * * *." The decision then proceeded to say that neither this, nor the further fact that the settlor had the right to withdraw the funds of the trust at will, which amounted in

law to the right to revoke, invalidated the trust. Cf. *Mushaw v. Mushaw,* 183 Md. 511, 39 A. 2d 465.

Thus, it may be seen that the destructibility of remainder interests is not controlling, nor is the fact that a trust contains certain provisions commonly found in wills. The basic tests are whether there is an intention to create a present trust, whether the trust instrument effects a present transfer of the legal title to the trust funds with an equitable estate or estates in a beneficiary or beneficiaries, and whether the transferee is a trustee and not merely an agent of the settlor. The Illinois Supreme Court upheld a Deed of Trust that contained a provision which directed the trustee to pay the creator's debts after his death. The creator also reserved the right to the income for life, the right to approve loans by the trustee, the right to revoke in whole or in part, and several other privileges. In rejecting the argument that the trust was testamentary in character and therefore invalid (since not properly executed as a will), the Court stated that it was a present conveyance with immediate legal effect and "The fact that a deed of trust is made in lieu of a will does not render the instrument a testamentary disposition * * *." *Bear v. Millikin Trust Co.* (Ill.), 168 N. E. 349. See also *Cramer v. Hartford-Conn. Tr. Co.* (Conn.), 147 A. 139; *Lewis v. Curnutt* (Iowa), 106 N. W. 914; *Bromley v. Mitchell* (Mass.), 30 N. E. 83; *Scott on Trusts,* Vol. 1, Secs. 565, 571.

It is to be noted that such provisions for the payment of the settlor's debts, taxes, etc., are the recommended practice of today. *Shattuck and Farr, An Estate Planner's Handbook,* 2nd Ed., p. 188.

## ESTATE AND INHERITANCE TAXES

If, as we have held above, a provision in a trust instrument that provides a creator may charge the trust fund by incurring debts does not invalidate the trust instrument, it follows as a necessary illation that a provision for the payment of estate and inheritance taxes (liabilities imposed by law) is, likewise, permissible, and does not render the instrument testamentary in character.

## CONTROL OVER INVESTMENTS

This leaves for consideration only the matter of the control over investments that was retained by the settlors. In this regard, it will suffice to say that the reservation of a qualified or limited control over investments, such as we have in this suit, in addition to a reservation of a life interest in the income and power of revocation, does not invalidate the trust. *Bear v. Millikin Trust Co., supra; Restatement of the Law, Trusts,* Sec. 57, Comment g; 32 A. L. R. 2d ps. 1276, 1285; *Talbot v. Talbot* (R. I.), 78 A. 535; *Stouse v. First Nat'l Bk.* (Ky.), 245 S. W. 2d 914.

What we have said above concerning the Deed of Trust dated December 29, 1938, applies with equal force to the instrument dated April 2, 1943, executed by Louis Schloss; and, the document of November 25, 1946, merely released the qualified power of the settlor over the control of investments.

Finding no error in the decree of the learned Chancellor below, it will be affirmed.

*Decree affirmed, with costs.*