297 F.2d 188
 111 U.S.App.D.C. 346
 Michael EDELMAN, Individually and as ancillary executor of
the estate of Harry L. Hoffman, and as ancillary
executor of the estate of Etta Edelman,
deceased, Appellant,
v.
NATIONAL BANK OF WASHINGTON et al., Appellees.
 No. 16254.
 United States Court of Appeals District of Columbia Circuit.
 Argued June 6, 1961.
Decided Nov. 2, 1961, Petition for Rehearing En Banc Denied
En Banc Dec. 14, 1961.
Chief Judge Miller and Circuit Judges Danaher, Bastian and
Burger would grant
the petition.
Petition for Rehearing Before the Division Denied Dec. 14, 1961.
Chief Judge Miller would grant the petition.
 
 Mr. Landon Gerald Dowdey, Washington, D.C., with whom Mr. Norman H. Bartow, Washington, D.C., was on the brief, for appellant.
 Mr. Jo V. Moregan, Jr., Washington, D.C., with whom Messrs. Roger J. Whiteford and John J., Carmody, Washington, D.C., were on the brief, for appellee The National Bank of Washington.
 Mr. James M. Earnest, Washington, D.C., for appellees Jones and Shadeline.
 Before WILBUR K. MILLER, Chief Judge, and BAZELON and WASHINGTON, Circuit Judges.
 BAZELON, Circuit Judge.
 
 
 1
 This is a suit by a surviving husband[1] to set aside a trust which his wife had created nine months before her death and to which she had transferred virtually all her real and personal property.[2] At the close of the opening statements of counsel at trial, the defendant-trustee moved to dismiss the complaint. The District Court granted the motion.[3] The threshold question on this appeal is whether the court erred in limiting its consideration to a single issue on the ground that plaintiff's counsel had abandoned alternative theories in his opening statement.
 
 
 2
 Under the provisions of the trust, which the settlor retained the power to amend or revoke, the trustee was directed to administer the property, pay the wife so much of the income and principal as she should request, and, upon her death, to distribute specific sums to named beneficiaries and place the remainder of the corpus in five trusts for her relatives. The complaint alleged, inter alia, that 'the trust was ineffective for the purpose of creating a valid inter vivos trust' and 'created no more than an agency relationship'; that the disposition by the deceased spouse 'was testamentary in character and in violation of the specific requirements of 19-103 of the District of Columbia Code (1951)'; that the transfer 'is illusory * * * and * * * Edna B. Hoffman retained such control over said property * * * and so failed to divest herself * * * thereof * * * that plaintiff's rights, as surviving spouse, are not barred'; and that the transfer was made 'for the purpose of defeating plaintiff's rights to said property as surviving spouse.'
 
 
 3
 In the course of plaintiff's counsel's opening statement, which included references to the several grounds of the complaint, he stressed the settlor-wife's power of revocation to show that the trust amounted to a testamentary disposition which was not executed in accordance with the statute of wills.[4] Thereafter, the court on three occasions inquired of counsel whether the proposition that the settlor's power of revocation invalidated the trust was the 'whole point of the case.' Counsel replied in the affirmative but not without attempting to indicate some qualification.[5] When it became apparent that the trial court had adopted this narrow view of plaintiff's case, the defendants moved to dismiss. In its ruling the court stated that 'the sole attack is based on the proposition * * * that a trust agreement * * * in which the power of revocation has been reserved is ineffective to create a trust.' He granted the motion on the ground that 'revocable trusts are valid.'[6]
 
 
 4
 The complaint was not so narrowly drawn. It supports alternative theories of relief.[7] And counsel alluded to them in his opening statement. To find that he abandoned them, it would have to clearly appear that he intended to do so.[8] It does not so appear from the replies which the court elicited from him upon the opening statement. Read in context, these replies permit the inference that counsel regarded the power of revocation as crucial support for three theories of attack: (1) that the trust was ipso facto invalid at its inception, (2) that it was testamentary in character, and (3) that the wife's control over the trust rendered it a fraud on plaintiff's statutory rights as surviving spouse.[9] Plaintiff was 'entitled to the benefit of all inferences that may be drawn from his counsel's statement.'[10]
 
 
 5
 The order granting the motion to dismiss is reversed and the case is remanded to the District Court with directions to consider the alternative theories for relief. We reach this result reluctantly. Plaintiff's counsel is not entirely without some blame for the view which the District Court adopted since his statements concerning the theory of his case were not models of clarity.
 
 
 6
 Reversed and remanded for further proceedings consistent with this opinion.
 
 
 7
 WILBUR K. MILLER, Chief Judge (dissenting).
 
 
 8
 Harry L. Hoffman[1] filed this suit against The National Bank of Washington to obtain possession of certain real estate being held by the bank which he said his wife, Edna B. Hoffman, owned when she died on August 9, 1958, and which he said had passed to him as surviving spouse 'under the laws of the District of Columbia in effect at the time of the death of the said Edna B. Hoffman * * *.'
 
 
 9
 It was also alleged in the complaint, however, that on November 18, 1957, Mrs. Hoffman executed a trust agreement by which she conveyed the real estate and certain personal property to The National Bank of Washington as trustee subject to the terms and conditions therein contained.[2] The allegation that Mrs. Hoffman owned the property when she died was, or course, inconsistent with the allegation that nearly a year before her death she had conveyed it to a trustee. So, in order to avoid the effect of the trust agreement, and to justify the allegation that Mrs. Hoffman owned the real estate at the time of her death, the complaint alleged she
 
 
 10
 '* * * attempted to create a dry, barren trust by which, among others, she retained (a) full and complete power of revocation in whole or in part, (b) the right to demand payment of all or any part of principal and income as she might request, and (c) full and complete power to change the beneficiaries or terms of the trust in whole or in part by simple, unwitnessed notice in writing.'
 
 
 11
 Hoffman also averred the trust agreement was ineffective because it was testamentary in character but was not witnessed as a will is required to be, that it did no more than create an agency relation, that 'The transfer of the property purportedly provided for in said Trust Agreement is illusory in nature and said Edna B. Hoffman retained such control over said property and the disposition of same and so failed to divest herself of the ownership and control thereof during her lifetime with the result that plaintiff's rights, as surviving spouse, are not barred.' Hoffman's complaint also alleged the trustee was holding certain personal property which should be administered in Maryland, as Mrs. Hoffman was a resident of that state, and prayed that it be delivered to her executors.
 
 
 12
 The complaint's allegation that 'Under the laws of the District of Columbia in effect at the time of the death of said Edna B. Hoffman (August 9, 1958) her title and interest to said real estate passed and descended to plaintiff as her surviving spouse,' is an obvious reference to the Act of August 31, 1957, 18-201a, D.C.Code (1951, Supp. VIII), 71 Stat. 560,[3] which by its terms did not become effective until 90 days after its enactment,-- a date which was subsequent to the execution of the trust instrument. Hence, the allegation was based on the theory that the trust agreement was invalid and that, therefore, Mrs. Hoffman had title to the real estate when she died. For, if the trust agreement was valid, she had divested herself of title to the real estate on November 18, 1957, before the effective date of the Act of August 31, 1957. So, that Act had no effect if the trust agreement was valid.
 
 
 13
 Twice during defendants'[4] opening statement and again during the argument on their motion to dismiss the conplaint, plaintiff's counsel agreeed that the sole issue was whether the settlor's reservation of the power of revocation rendered the trust agreement ineffective, thus indicating he did not desire to press or rely upon the testamentary point. The trial judge proceeded to decide the case on the basis of that agreement. After citation of authorities, he concluded 'that a revocable trust is valid and that the fact that the power of revocation is reserved by the settlor does not affect its validity or its effectiveness.' Consequently, the complaint was dismissed.
 
 
 14
 In their decisional paragraphs, the majority say:
 
 
 15
 '* * * In its ruling the court stated that 'the sole attack is based on the proposition * * * that a trust agreement * * * in which the power of revocation has been reserved is ineffective to create a trust'. He granted the motion on the ground that 'revocable trusts are valid.'
 
 
 16
 'The complaint was not so narrowly drawn. It supports alternative theories of relief. And counsel alluded to them in his opening statement. To find that he abandoned them, it would have to clearly appear that he intended to do so. It does not so appear from the replies which the court elicited from him upon the opening statement. * * *'
 
 
 17
 Thus, the majority disregard the several occasions-- to which they themselves direct attention-- when plaintiff's counsel expressly limited the scope of the complaint and opening statement by agreeing that the sole issue for decision was whether a revocable trust is valid. I think it is error to consider, as the majority do, that the issues are those set forth in the complaint and the opening statement, regardless of subsequent express agreement by plaintiff's counsel that only the issue of revocability was presented. That is the reason for my dissent.
 
 
 18
 It is generally true that a case will be disposed of on appeal on the same theory on which it was tried in the trial court.[5] Where a plaintiff bases his right to recover wholly on one count of his complaint to the exclusion of the other, his rights under such other count cannot be considered on appeal. When the trial judge has decided the case by determining the question which plaintiff's counsel stated to be the sole issue, it would manifestly be unfair to the court, and to the defendant as well, to permit plaintiff's counsel to argue on appeal that he should have been heard on another issue which, although set forth in his complaint and mentioned in the opening statement, he had expressly abandoned later in the trial. The principle underlying the doctrines of waiver and estoppel also operate to hold plaintiff's counsel to the theory he adopted in the trial court.
 
 
 19
 This is such a case. Plaintiff's counsel pleaded the trust agreement was invalid and ineffective (a) because it was testamentary in character, but was not witnessed as a will is required to be; and (b) because the settlor reserved the power of revocation. In his opening statement, plaintiff's counsel referred to these two bases for his theory of invalidity. But, as I have indicated, during his adversary's opening statement and in the course of argument on defendant's motion to dismiss, plaintiff's counsel stated on several occations that the sole issue was whether the power of revocation invalidated the trust. He submitted the case on the single point and did not protest when the trial judge decided it upon that issue alone.
 
 
 20
 That plaintiff's counsel did indeed concede the sole issue to be whether revocability invalidated the trust is affirmatively stated in the majority opinion, from which I quote the following:
 
 
 21
 '* * * The court on three occasions inquired of counsel whether the proposition that the settlor's power of revocation invalidated the trust was the 'whole point of the case.' Counsel replied in the affirmative but not without attempting to indicate some qualification. * * *'
 
 
 22
 I quote from the transcript of the argument on the motion to dismiss the following colloquy between the court and plaintiff's counsel, which does not seem to me to show any attempt on counsel's part to 'indicate some qualification' of his concessions:
 
 
 23
 'The Court. * * * You are relying on the contention that on its face the trust agreement is invalid, because it reserves the power of revocation. Is that correct?
 
 
 24
 'Mr. Dowdey (Counsel for plaintiff.) That is correct, Your Honor.
 
 
 25
 'The Court. Very well.
 
 
 26
 'Mr. Dowdey. And that is the substantial point.
 
 
 27
 'The Court. I don't know what you mean by 'substantial.' Is this correct or isn't it?
 
 
 28
 'Mr. Dowdey. That is correct, Your Honor. Your Honor has a facility for expressing these things shortly that unfortunately I cannot emulate. I have a lawyer's reluctance to strike so.'
 
 
 29
 In the course of defendants' opening statement, the following appears:
 
 
 30
 'The Court. Yes; yes indeed.
 
 
 31
 'As I understand it, the contention of the other side is that the privilege of revoking that the settlor retained makes this trust agreement ineffective to bar the statutory share of the surviving spouse. Isn't that the whole point in the case?
 
 
 32
 'Mr. Dowdey (Counsel for plaintiff.) That is precisely it.'
 
 
 33
 Again, during the defendants' opening statement, the following colloquy between the trial judge and plaintiff's counsel, which is quoted at footnote 5 of the majority opinion, shows clearly the concession that the effect of revocability was the only issue:
 
 
 34
 'The Court. * * * There is a question in the law as to whether, if a settlor of a trust reserves the power of revocation, he creates a valid trust, whether anything passes to anybody.
 
 
 35
 'Mr. Morgan (Counsel for the Bank). Well, if Your Honor please, we would be quite happy to allow the case to go on that point.
 
 
 36
 'The Court. Well I think that is the whole question. Do you agree with that, Mr. Dowdey?
 
 
 37
 'Mr. Dowdey. Oh yes, as opposed to the policy of Congress as expressed in the statute.
 
 
 38
 'The Court. Now don't dress it up. Is this the question or isn't it?
 
 
 39
 'Mr. Dowdey. That is the question, precisely.'
 
 
 40
 Thus it seems clear that plaintiff's counsel abandoned his allegation that the trust is invalid because it was testamentary in character, and based his claim of invalidity solely on revocability; but nevertheless the majority opinion reverses and remands for a hearing on the abandoned issue. I think plaintiff's counsel should be held to the theory he announced in the trial court.
 
 
 41
 In an attempt to avoid the effect of counsel's repeated concession that the only issue was whether a revocable trust is valid and effective, the majority say, after their recital of the concessions:
 
 
 42
 '* * * Read in context, these replies permit the inference that counsel regarded the power of revocation as crucial support for three theories of attack: (1) that the trust was ipso facto invalid at its inception, (2) that it was testamentary in character, and (3) that the wife's control over the trust rendered it a fraud on plaintiff's statutory rights as surviving spouse. Plaintiff was 'entitled to the benefit of all inferences that may be drawn from his counsel's statement."
 
 
 43
 As the 'replies' of plaintiff's counsel-- concessions that his claim of invalidity was based solely on revocability-- amounted to an abandonment of the allegations of his complaint and opening statement that the testamentary character of the trust instrument made it invalid, I thing it illogical and incorrect to say, as the majority do, that these replies, read in context, permit the inference that counsel regarded that power of revocation as crucial support for all the theories of attack set forth in his complaint. I do not believe that these concessions should be read in context with the complaint and counsel's opening statement; for that would mean that an attorney's subsequent abandonment of a theory set forth in his complaint and opening statement can never be effective.
 
 
 44
 Plaintiff cannot be saved from the consequences of his counsel's concessions during defendants' opening statement and in the final argument that the sole issue was whether revocability rendered the trust invalid merely by pointing out that he had suggested another issue in the complaint and his opening statement. The statements that there was a single issue clearly limited the scope of the complaint and plaintiff's opening statement. They were made, as I have said, not only during defendants' opening statement, but also in the course of argument on the motion to dismiss, when plaintiff's counsel knew the court's ruling might, as it did, terminate the proceeding. It has been well said, '* * * The reason for holding a litigant to his announced theory becomes more compelling as the litigation proceeds to advanced stages.'[6]
 
 
 45
 It is proper to point out, I think, that the testamentary theory is so lacking in substance that plaintiff's counsel was well advised in abandoning it. From this it may be inferred that he deliberately eliminated that issue from the case because he had concluded it was not a sound basis for his contention that the trust agreement is invalid.
 
 
 46
 While Mrs. Hoffman reserved the right to revoke or amend the trust or change the beneficiaries, she gave complete management to the trustee, and reserved no administrative power. The trustee was directed to pay Mrs. Hoffman enough of the income to cover her living expenses, taxes and the cost of illness, and as much more as she might request. The trust was to terminate at her death, at which time the corpus was to be distributed to or placed in trust for various remaindermen. In my opinion, such a trust is not testamentary in character.
 
 
 47
 The fact that the settlor reserves a life estate, or the power to revoke or amend or to change the beneficiaries, does not make the trust testamentary. 1 Scott, Trusts 57.1 (1956); Restatement (Second), Trusts, 57, comment a (1959); Brown v. Fidelity Trust Co., 126 Md. 175, 94 A. 523 (1915); Rippon v. Mercantile Safe Deposit and Trust Co., 213 Md. 215, 131 A.2d 695 (1957).
 
 
 48
 Settlor's reservation of income from and certain rights over the corpus for her life, so that the gifts and successor trusts were not to become effective until her death, did not make the gifts and successor trusts testamentary. 1 Scott, Trusts 56.5 (1956). The remaindermen acquired a presently existing future interest. It is generally held that the addition of the power to revoke or to change the beneficiaries does not prevent the remainderman's future interest from presently existing, but merely makes it subject to divestiture. 1 Scott, Trusts 57.1 (1956).
 
 
 49
 In Liberty National Bank v. Hicks, 84 U.S.App.D.C. 198, 173 F.2d 631, 9 A.L.R.2d 1355 (1949), this court held that a trust in which the settlor reserved a life interest gave the remaindermen a valid present interest in a future estate and was effective as to their interest from the time the trust was created and that therefore the trust provision for the remaindermen was not testamentary. True, the trust in the Hicks case was irrevocable, while this one is not. The only difference in legal effect is, however, that the future interests of the Hicks remaindermen could not be divested, while those in this case were subject to divestiture before the death of the donor.
 
 
 50
 The decision of the Fifth Circuit in Commissioner of Internal Revenue v. Chase Manhattan Bank, 259 F.2d 231, 256-257 (1958), is helpful on our question, and confirms what I have said heretofore. I quote from the opinion:
 
 
 51
 '* * * Scott, Bogert, and the Restatement do not share the Tax Court view that such a trust is 'clearly testamentary'. On the contrary, 'It has been universally held that the creation of a trust inter vivos is not a testamentary disposition merely because the settlor reserves a power to revoke the trust or to modify it, even though in addition he reserves a beneficial life interest in the trust property.' Scott, The Effects of a Power to Revoke a Trust, 57 Harv.L.Rev. 362, 368 (1944). Virtually no cases can be found holding a contrary view. The trust comes into being at the time when the settlor delivers the property to the trustee, and all the beneficiaries acquire interests in the trust at that time, even though there is a condition subsequent allowing the settlor to deprive the beneficiaries of their interests. Unlike a will, 'the death of the settlor is not a condition precedent to the vesting of the interest in the beneficiary. * * *' 1 Scott on Trusts, Section 57.1 p. 445. Here, Marie acquired an interest when the trust was created. It was subject to divestment, but once acquired, it might never be divested. In fact, it was not divested.'
 
 
 52
 For these reasons and because I think the trial judge ruled correctly concerning the revocability question, I would affirm.
 
 
 
 [1]
 The surviving husband died shortly after this suit began. His executor, a devisee under his will, was substituted as party plaintiff
 
 
 [2]
 In the interest of clarity throughout this opinion, we shall refer to our appellant and appellees as plaintiff and defendants, respectively
 
 
 [3]
 The dismissal order recites 'that upon the facts and the law, the plaintiff is entitled to no relief * * *.' Since 'the facts' are not described, we assume they are those alleged in the complaint and those asserted in the opening statement
 
 
 [4]
 D.C.Code 19-103 (1951) requires that a will be attested by two witnesses. The settlor's signature on the trust agreement was attested by only one witness
 
 
 [5]
 Thus, during appellees' opening statement, the following colloquy took place:
 'The Court. * * * There is a question in the law as to whether, if a settlor of a trust reserves the power of revocation, he creates a valid trust, whether anything passes, to anybody.
 'Mr. Morgan (Counsel for the Bank). Well, if Your Honor please, we would be quite happy to allow the case to go on that point.
 'The Court. Well I think that is the whole question. Do you agree with that, Mr. Dowdey?
 'Mr. Dowdey (Counsel for Appellant). Oh yes, as opposed to the policy of Congress as expressed in the statute.
 'The Court. Now don't dress it up. Is this the question or isn't it?
 'Mr. Dowdey. That is the question, precisely.'
 
 
 [6]
 Plaintiff filed a petition for rehearing which was denied. Defendants contend here that certain remarks by plaintiff's counsel, in the course of oral argument on the petition, may be read as admissions that the court correctly understood plaintiff's case upon the motion to dismiss. We think these remarks are too ambiguous to support this contention
 
 
 [7]
 'On a motion to dismiss, the plaintiff's allegations are to be taken as true and all reasonable favorable inferences arising therefrom are to be indulged. Dioguardi v. Durning, 2 Cir., 13. F.2d 774.' Callaway v. Hamilton Nat. Bank of Washington, 90 U.S.App.D.C. 228, 231, 195 F.2d 556, 559 (1952) (dictum). Accord: Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); National Used Car Market Report, Inc. v. National Automobile Dealers' Ass'n, 91 U.S.App.D.C. 313, 200 F.2d 359 (1952); Machado v. McGrath, 90 U.S.App.D.C. 70, 73, 193 F.2d 706, 708 (1951), cert. denied, 342 U.S. 948, 72 S.Ct. 557, 96 L.Ed. 705 (1952)
 
 
 [8]
 Pomeroy v. Pennsylvania R.R., 96 U.S.App.D.C. 128, 223 F.2d 593 (1955), cert. denied, 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859 (1957)
 In summarizing his argument on the motion to dismiss, counsel said:
 'The question then is really this: Has this device (the trust) * * * so removed control of that property as it can be said * * * that the property is not owned by the wife during coverture, or after the effective date of the statute? * * *
 '* * * And when the Congress uses the word 'own,' did they mean a technical formality of ownership, or did they mean real, substantive ownership? * * * I think that this device of the revocable trust-- and I even hesitate to call it a revocable trust, because it is more than that. * * * Property is owned when you have that right to revoke, to alter, to amend, to direct the trustee to do this, to direct the trustee to do that, by nothing more than a simple letter.'
 
 
 [9]
 See generally Mushaw v. Mushaw, 183 Md. 511, 39 A.2d 465 (1944); Bolles v. Toledo Trust Co., 144 Ohio St. 195, 58 N.E.2d 381, 157 A.L.R. 1164 (1944); Sykes, Inter Vivos Transfers in Violation of the Rights of Surviving Spouses, 10 Md.L.Rev. 1 (1949); Simes, Protecting the Surviving Spouse by Restraints on the Dead Hand, 26 U. of Cinc.L.Rev. 1 (1957)
 Md.Ann.Code, Art. 93, 329 (1957), which authorizes a surviving spouse to elect a share of the deceased's estate in lieu of any devises or bequests to him, an analogous statute which became since the wife was a Maryland domiciliary. If applicable, D.C.Code 18-211 (Supp.1960), 1960), an analogous statute which became effective eleven days after the date of the instant trust, would govern the descent of realty since it is located here.
 
 
 [10]
 Best v. District of Columbia, 291 U.S. 411, 415-16, 54 S.Ct. 487, 489, 78 L.Ed. 882 (1934). Accord: Ackerhalt v. National Sav. & Trust Co., 100 U.S.App.D.C. 312, 244 F.2d 760 (1956); Cioffi v. Queenstown Apartments, 100 U.S.App.D.C. 227, 243 F.2d 650 (1957)
 
 
 [1]
 Harry L. Hoffman died during the pendency of the action. His executor was substituted as plaintiff
 
 
 [2]
 Hoffman was not named as a beneficiary
 
 
 [3]
 Section 201a(b), upon which appellant relied, is as follows:
 '(b) The intestate share as provided by section 18-101, shall attach to all real property owned by husband or wife during coverture: Provided, That neither husband nor wife hereafter shall have the right to convey, transfer or encumber his or her real property free of the surviving spouse's interest in case of intestacy, as provided in sections 18-101, 18-215a, 18-201a, 18-210 to 18-212, 18-714 to 18-717, and 30-201, without joinder of the other spouse.'
 
 
 [4]
 The plural is used because the ancillary administrators of the estate of Mrs. Hoffman were added as defendants after the complaint was filed
 
 
 [5]
 Rippon v. Mercantile Safe Deposit and Trust Co., 213Md. 215, 131 A.2d 695, 698 (1957)
 
 
 [6]
 In the Matter of Linda Coal and Supply Co., 255 F.2d 653, 657 (3rd Cir.1958). See also Oscanyan v. Arms Co., 103 U.S. 261, at page 263, 26 L.Ed. 539 (1880), where the Supreme Court said:
 'In the trial of a cause the admissions of counsel, as to matters to be proved, are constantly received and acted upon. They may dispense with proof of facts for which witnesses would otherwise be called. They may limit the demand made or the set-off claimed. Indeed, any fact, bearing upon the issues involved, admitted by counsel, may be the ground of the court's procedure equally as if established by the clearest proof. And if in the progress of a trial, either by such admission or proof, a fact is developed which must necessarily put an end to the action, the court may, upon its own motion, or that of counsel, act upon it and close the case. * * *'