STATE, Use of Andrew Henderson,

*vs.*

UNITED RAILWAYS AND ELECTRIC COMPANY.

*Street Railroad—Collision With Automobile—Evidence as to Speed—Opinions—Contributory Negligence.*

A witness of a collision between a street car and an automobile, while he may testify as to whether the car was moving slowly or rapidly, cannot fix the speed as so much per hour, without having shown some special knowledge which would enable him to speak as an expert.                                    p. 309

In an action for injuries caused by negligence in the running of a street car, the exclusion of questions, asked of the motorman and his instructor, as to what could or might have been done under other circumstances or by the use of other means, *held* not cause for reversal, such questions calling merely for conjectural answers, without any adequate basis or information.                                    p. 310

In an action for injuries caused by the collision of a street car with plaintiff's automobile, *held* that the facts were not such as to render applicable the doctrine of last clear chance.

p. 311

In an action for injuries caused by the collision of defendant's street car with plaintiff's automobile, *held* that plaintiff was guilty of contributory negligence in starting to cross defendant's tracks without looking in the direction from which the car was approaching, and in giving no signal.   pp. 311, 312

*Decided June 29th, 1921.*

Appeal from the Court of Common Pleas of Baltimore City (Heuisler, J.).

Action by the State of Maryland, for the use of Andrew Henderson, against the United Railways and Electric Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Defendant's thirteenth prayer was as follows:

The court instructs the jury that if they believe from the evidence that the equitable plaintiff, while approaching with his automobile the railway tracks of the defendant company, was in a position to have had a clear and unobstructed view of said tracks in a southerly direction for a distance of more than three hundred feet and that said unobstructed view was obtainable by the plaintiff during his progress towards said tracks from a point at least eighteen feet eastwardly therefrom, if the jury so finds; and if the jury further believes from the evidence that the equitable plaintiff in approaching said railway tracks failed to look for approaching cars at a time when his view was, as aforesaid, unobstructed, and, without looking, drove upon said tracks and collided with the car mentioned in the evidence, then there can be no recovery for the injuries complained of in this case and the verdict of the jury must, therefore be for the defendant.

Defendant's fourteenth prayer was as follows:

The court instructs the jury that it was the duty of the equitable plaintiff in approaching the railway tracks of the defendant to have his automobile under control and to look for approaching cars before attempting to cross said tracks; and if the jury believes from the evidence that the equitable plaintiff drove his automobile upon said tracks without looking for approaching cars, or while said automobile was not under control, then the verdict of the jury must be for the defendant.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Charles F. Harley* and *Burdette B. Webster,* for the appellant.

*J. Pembroke Thom,* with whom was *Walter V. Harrison* on the brief, for the defendant.

STOCKBRIDGE, J., delivered the opinion of the Court.

This is a suit by the appellant under Lord Campbell's act against the United Railways and Electric Company for the killing of his wife as the result of alleged negligence on the part of a motorman of the railway company.

The sequence of facts of the killing are substantially these:

Mr. Henderson had been attending a funeral to which he went in his own limousine and was himself operating the machine. After the interment in the cemetery he left by the northernmost gate, which comes out on Greenmount Avenue nearly opposite but a little to the south of Lafayette Avenue. On Greenmount Avenue there is a wall bounding the cemetery which, as it reaches this northern gate, makes a curve into the gate itself. In the machine with Mr. Henderson were his wife, who was sitting on the rear seat directly behind her husband, and upon her right two other ladies. On the front seat and to the right of Mr. Henderson was seated Mr. Charles C. Rhodes. The machine was headed west, and as it emerged from the cemetery gate there was a car of the railway company approaching from the south. Mr. Henderson was not looking in the direction from which the car was coming until just as his machine was, as some of the witnesses say, struck by the car, or, as others put it, pushed around by the car so that after the collision it was facing south.

As to the force of the impact, there is some difference in the testimony, but one physical fact, upon which there is no contradiction, gives the most accurate idea of the violence of the blow.

Mr. Henderson's automobile was struck a little back of the middle of the machine upon the left-hand side, about opposite the rear door of the machine. The machine was not upset and did not appear to be greatly injured. This is of importance chiefly as showing the speed at which the car must have been proceeding. None of the passengers were thrown from the machine, but Mrs. Henderson was injured

by flying glass and seems to have suffered also some internal injury, as a result of which she died five days later.

There are eighteen exceptions in the record of the case, seventeen of which are upon the testimony, and the eighteenth to the action of the court on the prayers. In argument before this Court appellant grouped the exceptions under four heads, as follows:

"1. The court refused to permit the plaintiff's witnesses to testify as to the speed of the street car.

"2. The court permitted an experienced motorman to contradict, under guise of expert testimony, the evidence of the motorman of the death inflicting car.

"3. The court refused to permit fair and awful cross-examination of the motorman.

"4. The court's instructions were erroneous and prejudicial."

The first of these was to the refusal of the trial court to permit Mr. Charles R. Rhodes, an attorney, to answer a question as to the speed of the car. There had been no evidence to justify Mr. Rhodes in testifying as an expert upon the point. He could, of course, have testified as to whether the car was moving rapidly or slowly, but not to fix the rate of speed as so much per hour, without having shown some special knowledge which would enable him to speak as an expert. *Mantik's Case,* 127 Md. 205.

The brief of the appellant contains the following note: "Before proceeding with the discussion of our second point it is proper for us to say that an examination of the record shows that the second exception is without merit. The same testimony was adduced without objection at other stages of the trial." It therefore becomes unnecessary to enter into any discussion of the points raised in the trial court with regard to the evidence which forms the basis of the second to the seventeenth exceptions. The third of the points upon which a reversal is asked is, as already noted, that the court refused to permit fair and lawful cross-examination of the motorman.

A careful reading of the direct and cross-examination of M. K. Guy, the motorman, and C. Edgar Hearn, the instructor of motormen for the company, fails to disclose such a curtailing of cross-examination by the court as entitles this ground of exception to any serious consideration. The motorman was cross-examined at great length upon all of the facts, so far as he knew them, connected with the accident, and an attempt was made to elicit answers from both the motorman and instructor as to what could or might have been done under other circumstances or by the use of other means. Even if the court had permitted it, such answers must necessarily have been conjectural merely, and without any adequate basis or information upon which to answer, and the issue which was being tried was one of fact rather than of theory, and no injury has been apparently done to the plaintiff's case by these rulings. The important exception deals with the action of the court in the rulings made upon the prayers which were offered. The plaintiff offered two, both of which were granted, and the defendant fourteen, of which the sixth, seventh, eighth, ninth, thirteenth and fourteenth were granted and the balance refused. The greatest stress in the argument was based upon a supposed conflict between the plaintiff's second and the defendant's thirteenth and fourteenth prayers as granted by the court. The plaintiff's second prayer reads as follows:

"The jury are instructed that even though they may find that there was want of reasonable care on the part of Andrew W. Henderson or Louisa C. Henderson, or both of them, yet the plaintiff is entitled to recover, if the jury further find that the motorman could have avoided the accident by the exercise of ordinary care after he saw, or by the use of ordinary care might have seen, that two automobiles coming from the cemetery were crossing or had crossed the railway tracks right ahead of the automobile which said Andrew W. Henderson was driving (if the jury so find), and that the said automobile so driven by said Henderson was approaching the tracks

and was in danger of being struck by the car (if the jury so find)."

This, a careful reading of it will show, is calculated to raise and only to raise the applicability of the doctrine of the last clear chance. To determine whether there is or not room for the application of this doctrine depends upon the facts of each particular case, and an examination of the testimony fails to show anything approaching a similar state of facts, where the question of the last clear chance has been permitted to go to the jury. *Cook* v. *United Railway Co.*, 132 Md. 553.

The evidence of the motorman of the car is that he put down his brake and threw on the reverse the moment that he saw the machine of the plaintiff, and the testimony of a number of the witnesses is to the effect that the automobile came to rest alongside and approximately about the middle of the length of the car. This would have been manifestly impossible had the car been moving north of Greenmount Avenue at the reckless rate of speed indicated by the testimony of the witness Rhodes, nor is there in the testimony of any of the witnesses anything shown wherein the motorman did not use that degree of care which is required under such circumstances. The equitable plaintiff himself testifies that as he came out of the gate of the cemetery and started across the tracks he was not looking to the side from which the car was approaching, and that he gave no signal by his claxton or other device to give warning of his approach. So far as he was concerned, this was clearly an act of negligence, and nothing supervened which makes the doctrine of the last clear chance applicable in a case like the present. The thirteenth and fourteenth prayers of the defendant have also been suggested as involving a conflict with the plaintiff's second prayer. As already said, that second prayer was directed chiefly to the doctrine of the last clear chance, and, therefore, under the facts of the case might have been properly refused. The defendant's thirteenth and fourteenth prayers were directed to the contributory negligence of the equitable appel-

lant. That has been clearly shown by the testimony of the appellant himself. It has been too frequently said by this court to make its reiteration necessary, that each of the approaching vehicles has a reciprocal duty to others which may be approaching at right angles, or approximately so to the other. That was a duty which Mr. Henderson failed to perform, and, therefore, he was guilty of contributory negligence, which is the point involved in the defendant's thirteenth and fourteenth prayers.

Finding no error in the rulings of the court before which the case was tried, the judgment will be affirmed.

*Judgment affirmed, with costs.*