ROSSELLO *v.* FRIEDEL

[No. 350, September Term, 1965.]

*Decided June 23, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*Samuel S. Smalkin,* with whom were *Hyman Ginsberg, Rollins, Smalkin, Weston & Andrew* and *Ginsberg & Ginsberg* on the brief, for the appellant.

*Wylie L. Ritchey,* with whom was *James A. Gede* on the brief, for the appellee.

McWilliams, J., delivered the opinion of the Court.

On 8 March 1962 Friedel (appellee) was injured in a collision between the truck in which he was a passenger and an automobile driven by Mrs. Rossello (appellant). At the trial below it was stipulated that the verdict of the jury should be in favor of Friedel, "the only matter at issue * * * [being] the amount of damages to be awarded." A verdict of $8,000 in his favor was the outcome.

After the accident Friedel was taken to Union Memorial Hospital where he was examined and treated by Dr. Robert E. Martin for multiple lacerations of the head, abdomen and left leg. In the admission note there is an entry reading "Back— Neg." He went home the following day. Dr. Martin saw him at intervals during the following three weeks. In a letter to Friedel's attorney, some nine months later, he stated that Friedel's wounds "all [had] healed satisfactorily" and that he had discharged him "from further followup care" on 28 March 1962. There was no mention of an injury to or complaint about his back.

Friedel was examined, on 10 July 1962, by Dr. George H. Yeager who reported his impression as follows: "Multiple subjective complaints for which an objective explanation cannot be found, when considered from the viewpoint of injuries incurred March 8, 1962."

Ten days after the accident Friedel filed with the Workmen's Compensation Commission a claim for compensation in which no mention is made of an injury to his back. In mid-April he resumed his job as a route salesman for a dairy. After five weeks he quit because, he said, he couldn't do the work. After that he drove a taxicab, worked for the State Roads Commission, caught stray animals for the Humane Society, and, since 1963, he has worked at his trade. He is a plumber. Dr. H. Alvan Jones examined him on 8 October 1963. He testified that "except for * * * [noting] minor developmental or structural abnormalities * * * namely, * * * [a] tilted fifth vertebra and

mild scoliosis * * * [his] examination * * * [was] entirely normal and negative."

Dr. Packard, an orthopedist, testified that Friedel had been sent to him by counsel [1] "for orthopedic evaluation only, and not for treatment." He first examined Friedel on 16 July 1962. When he began to read Friedel's history from his notes, counsel for appellant objected. The trial judge (Turnbull, J.) did not rule on the objection but he told the doctor not to give "the history which he [Friedel] gave * * * [him]," and to give only his "evaluation as a result of * * * [his] examination." Dr. Packard thereupon described, at length, what he found in the course of his examination, virtually none of which has any relevance here. He said Friedel complained of some pain, beginning "about three weeks prior" (about 15 weeks after the accident) to his first visit, in the area of his left sacroiliac joint and he concluded he had a "symptomatic left sacro-iliac [sic] joint." He felt the basic symptoms could "be aggravated by a trauma" but that the cause of his condition was "not traumatic." Since some months had gone by, between the injury [8 March to about 25 June] "and the [onset of] symptoms in this region * * * [he] couldn't see any definite causal connection."

He saw Friedel again on 17 December 1962. On this occasion he found that his chest expansion had increased 1¼ inches, which, he said, was "the most important physical finding" made on that date. His "symptoms" were still centered about "the left sacro-iliac [sic] joint." He said that he could not discuss "physical impairment" because "the range of motion he * * * [was] able to demonstrate for his back would be considered within normal limits." Over objection he was then permitted to say, "his symptoms are *all subjective in nature* yet [they] appear to be real. This would therefore be considered as a *five per cent loss of use of patient's lower back.*" (Emphasis supplied.) Appellant's motion to strike was overruled.

Because of its importance we quote verbatim the following portion of the transcript:

---

1. Friedel was referred to Dr. Packard by the attorney for his employer's compensation carrier.

"(The Court) As a result of your examinations, Doctor, the two examinations which you made, were you able to come to a conclusion as to the cause of the disability which you estimated?

"(Mr. Smalkin) I would have to object, if your Honor please, with due deference to that question, because the Doctor was not permitted to give a history.

"(The Court) Well, excluding the history which you received were you able to come to a conclusion as to the cause of the disability which you estimated?

"(Mr. Smalkin) Objection.

"(The Court) Overruled.

"(The Witness) No. Without the history I couldn't come to a conclusion as to the causal connection.

"(Mr. Smalkin) I renew my motion to strike the opinion of the Doctor as to disability.

"(The Court) Considering the history which was given you, taking that into consideration, could you come to an opinion, with reasonable medical probability, as to the cause of the disability which you estimated. Objection; overruled. You can answer, Doctor.

"(The Witness) My conclusion would be based on the history that the patient gave me, namely, he had been injured in an accident, that subsequent thereto he developed these back complaints and thereafter had had no trauma, nor had he previously had any trauma to this same area. Because I felt he localized his symptoms well, I felt this lent great credence to the fact his symptoms were real, were not simply something that he told me, and because of this I felt that I should assign some acknowledgment to this medically as to permanency, and that is the reason I arrived at this five per cent figure.

"(The Court) Motion to strike; motion overruled. Do you have an opinion, with reasonable medical probability, as to whether or not the condition which you found was brought about as a result of an accident of some kind?

"(Mr. Smalkin) Objection.

"(The Court) Overruled. Answer the question yes or no, please, Doctor.

"(The Witness) To the opinion?

"(The Court) Yes. Do you have an opinion as to whether or not it was brought about as a result of an accident?

"(The Witness) There is no definite medical proof, to my mind, this can be attributed to a trauma irrefutably with reasonable medical certainty.

"(The Court) Motion to strike; motion overruled."

Produced next was Dr. Hilbert M. Levine, another orthopedist, to whom Friedel was sent also by counsel. He examined him first on 7 September 1962 "to see if he needed any further treatment." He added that he "didn't feel that he needed any further treatment at that time" and that he "didn't give him any treatment." Friedel visited Dr. Levine again on 20 February 1963, "for evaluation only" he (Dr. Levine) believed. The third visit was 14 October 1963, again "for evaluation purposes." The fourth and last visit, "for evaluation" was 22 May 1964. He (Dr. Levine) had been told the trial of the case was imminent. Actually it was not reached, as earlier noted, until 22 March 1965. Over objection he told of Friedel's complaints and of his being sent to Dr. Packard by *"the insurance company."* Judge Turnbull would not let him tell what Friedel said his injuries were at the time of the accident although a moment later he said it was his "impression * * * that * * * [Friedel] had sustained multiple injuries in a truck accident on March 8, 1962." Most of his lengthy testimony consisted of a recitation of irrelevant details seldom rising above the level of pointing out that the patient had hands, feet and a head. Appellant's counsel objected to his stating any impression which was based in part upon another physician's interpretation of X-ray pictures. We quote again, verbatim, from the record:

"(The Court) Strike that out, and strike out the other answer which he started to give. Doctor, if you can give us an impression, casting aside from your mind the report on the X-rays if you can give us an impression based solely and only upon your examina-

tions you may do so, but your impression must be based upon your examination alone. Can you give us an impression based on your examination?

"(The Witness) Yes, sir.

"(The Court) Very well. You may give that.

"(The Witness) Based on my examination — examinations, my impression was that the patient had sustained a chronic lumbosacral strain and a left sacro-iliac [sic] strain.

"(Mr. Smalkin) I move the answer be stricken.

"(The Court) Overruled.

"Q. (Mr. Gede) As a result of the examinations and your impression, did the patient, or Mr. Friedel suffer any permanency?

"(Mr. Smalkin) Objection.

"(The Court) Sustained.

"Q. (Mr. Gede) Did you find as a result of your examination, Doctor, that there would be any disability whatsoever that would have inured to Mr. Friedel as a result of these—

"(Mr. Smalkin) Objection.

"(The Court) Read that.

"(Whereupon, question was read by the Reporter.)

"(The Court) As a result of these findings—that is the end of the question. The objection is sustained.

"Q. (Mr. Gede) Do you feel as a result of your examinations of Mr. Friedel, Doctor, that he will have any difficulties in the future?

"(Mr. Smalkin) Objection.

"(The Court) Sustained. Doctor, answer this yes or no, please sir. Do you have an opinion, with reasonable medical probability, as to whether or not Mr. Friedel suffers from a condition which is in its nature permanent?

"(Mr. Smalkin) Objection.

"(The Court) Objection overruled. Based solely upon your examinations.

"(The Witness) Yes, sir.

"(The Court) Very well. What is that opinion?

"(Mr. Smalkin) Objection.

"(The Court) Overruled.

"(The Witness) He has developed a chronic lumbosacral and sacro-iliac [sic] strain.

"(The Court) What is your opinion as to whether or not, with reasonable medical probability, that condition is a permanent condition?

"(Mr. Smalkin) Objection.

"(The Court) Overruled.

"(The Witness) This is permanent.

"Q. (Mr. Gede) Can you estimate the percentage of this disability, Doctor, as a whole?

"(Mr. Smalkin) Objection.

"(The Court) Answer yes or no, please, sir.

"(The Witness) Yes.

"Q. (Mr. Gede) Would you state that percentage.

"(Mr. Smalkin) Objection.

"(The Court) With reasonable medical probability, Doctor.

"(The Witness) I feel there is now a fifteen per cent permanent partial disability of his back.

"(The Court) Motion to strike; motion overruled."

At the conclusion of the evidence appellant's counsel pressed his motion to strike from the testimony of Dr. Packard the opinions he expressed and his repetition of Friedel's history. Judge Turnbull, probably anticipating a verdict favorable to appellant (defendant) said, "I am going to do you a favor and overrule your motion." Responding to further argument the court said, "Your logic is irrefutable, but the motion is overruled." A similar motion in respect of the testimony of Dr. Levine was denied.

No attempt was made to elicit the opinions of Dr. Packard and Dr. Levine by the use of hypothetical questions nor is there any showing why this was not done.

The exclusion of medical testimony based on statements by "patients" who are not patients is supported by the weight of authority, included in which are the decisions of this Court. We think it unnecessary to do little more than quote from our most recent consideration of the rule. In *Wilhelm v. State Traffic*

*Comm.*, 230 Md. 91, 97, 185 A. 2d 715 (1962), Judge Prescott (now Chief Judge), for the Court, said:

> "Doctor Rothstein, a psychiatrist, was called to the witness stand by the appellants. The appellee, Paul Edward Burke, objected to his reciting the history he had obtained from the wife when he examined her. The doctor testified that he did not treat her, and there was no attempt made to show that he was employed to recommend treatment of her by her other physicians. Cf. *Yellow Cab Co. v. Hicks*, 224 Md. 563, 168 A. 2d 501. This Court has consistently and repeatedly recognized the principle that a non-treating physician may not relate the history given to him by a litigant. *Parker v. State*, 189 Md. 244, 55 A. 2d 784; *Francies v. De Baugh*, 194 Md. 448, 71 A. 2d 455; *Wolfinger v. Frey*, 223 Md. 184, 162 A. 2d 745. And in *Connor v. State*, 225 Md. 543, 171 A. 2d 699, this Court, in an opinion by Judge Horney, flatly held that this rule applied to psychiatrists. In addition, appellants admit that Dr. Rothstein would have repeated 'the same history which was given by Dr. Filtzer and Dr. Jones [appellants' witnesses who had already testified]'; hence, if the doctor's opinion were desired, there is no apparent reason for not having asked him a hypothetical question. There was no error here."

Judge Horney also said in *Connor v. State*, 225 Md. 543, 557, 171 A. 2d 699 (1961) (cited in the above quotation):

> "It was likewise proper to exclude testimony as to the 'subjective' conclusions of the psychiatrist based on the complaints of the defendant. *What we have said with regard to the 'history' of the defendant applies with equal force to the non-objective symptoms.* (Emphasis supplied.)

Friedel contends it was not error to allow the testimony of Dr. Packard and Dr. Levine because they were, in fact, treating physicians. We are unable to find any merit in this conten-

tion. Dr. Packard said Friedel "was referred to * * * [him] for orthopedic evaluation only, *and not for treatment."* (Emphasis supplied.) Dr. Levine said he examined Friedel "to see if he needed any further treatment." He concluded he didn't need "any further treatment" and he "didn't give him any treatment" then or "at any time thereafter." Later, when asked by the Court, "did you give him any treatment at all by way of medication or manipulation or anything of that kind" he replied, "No, sir."

After the jury had been impaneled and sworn the court, as earlier indicated, said:

"(The Court) For the record, gentlemen, it is stipulated by counsel in open court that the Plaintiff is entitled to a verdict in his favor, and that the only matter at issue is the amount of damages to be awarded, is that correct, gentlemen?
"(Mr. Ritchey) Yes, your Honor.
"(Mr. Smalkin) Yes, sir."

Friedel contends the stipulation, ipso facto, establishes a causal connection between the accident and all injuries recited in the declaration. It is there stated that the "plaintiff sustained * * * injuries to his head, *back,* body and limbs." (Emphasis supplied.) We do not find in the record anything to suggest that the trial judge considered this contention or that any argument was advanced urging him to do so. Maryland Rule 885. Nevertheless, we find it devoid of merit. The language in the declaration is obviously nothing but the customary catchall. It seems clear to us that the main issue, from the very beginning, has been the extent of the appellee's injuries and whether they were the result of the accident. It has been said that the language of a stipulation will not be so construed as to give it the effect of an admission of a fact obviously intended to be controverted. 83 C.J.S., *Stipulations,* § 11 (1953). The argument reflects ingenuity and imagination on the part of counsel which very well may be turned to account in different circumstances but which, in this instance, must be disregarded.

Since the judgment will be reversed and the case remanded

244

it will not be necessary for us to consider the other contentions made by the parties.

*Judgment reversed.*

*Case remanded for a new trial on the issue of damages.*

*Appellee to pay the costs.*