EUGENE L. BEAHM ET AL. *v.* FRANCIS E.
SHORTALL, JR. ET AL.

[No. 50, September Term, 1976.]

*Decided February 7, 1977.*

322

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*James P. Salmon*, with whom were *Charles E. Channing, Jr.*, and *Sasscer, Clagett, Channing & Bucher, Samuel S. Smalkin* and *Rollins, Smalkin, Weston, Richards & Mackie* on the brief, for appellants.

*William A. Hegarty* and *John O. Herrmann* for Francis E. Shortall, Jr., and Martha M. Shortall, part of appellees. *Roger J. Bennett* for Owen Ray Payton, other appellee.

ORTH, J., delivered the opinion of the Court.

This appeal requires that we look again at the rule followed in this jurisdiction concerning the admissibility of the testimony of a physician employed to examine a person, not for the purpose of treatment, but in order to qualify as an expert witness during litigation.

### I

We have made a distinction between a treating physician and a nontreating physician. Our latest word on the matter

appears in *Candella v. Subsequent Injury Fund*, 277 Md. 120, 353 A. 2d 263 (1976), in which we summarized the law:

> "We have applied in this State the universally recognized principle that an attending physician may testify as to the medical history [1] related to him by his patient,[2] and may also state his conclusions reached on the strength of that history. . . . Such testimony is admitted under an exception to the hearsay rule, the underlying rationale being that the patient's statements to his doctor are apt to be sincere when made with an awareness that the quality and success of the treatment may largely depend on the accuracy of the information provided the physician.

> "In Maryland, however, we have not extended this principle to include the case in which the patient's history has been related to a nontreating physician, . . . ; in these instances, the trustworthiness which characterizes the declaration is no longer assured, since the patient is aware that the statements are being received primarily to enable the physician to prepare testimony on his behalf rather than for purposes of diagnosis and treatment." 277 Md. at 123-124.

---

1. It is manifest from our opinions on the subject that "medical history", "history of the case", "patient's history", "history received from the patient", "case history", "history", "statements by 'patients' who are not patients", and "patient history", variously used therein, all have the same connotation. They denote statements made to the examining physician by the person being examined, not only with respect to the "history" of the case in the sense of the relating of past events concerning the injury or illness, but also with respect to what such person said in giving his symptoms, in describing his feelings or in complaining about the pain he experienced. *See* Rossello v. Friedel, 243 Md. 234, 242, 220 A. 2d 537 (1966); Connor v. State, 225 Md. 543, 557, 171 A. 2d 699, *cert. den.*, 368 U. S. 906 (1961). Therefore, as used in this opinion, "medical history" includes "subjective symptoms" unless otherwise indicated.

2. Technically, a person examined by a physician only for the purpose of qualifying the physician as a medical expert would not be a "patient" of that physician within the usual meaning of patient, namely, "one under medical treatment". American Heritage Dictionary of the English Language (1969). For ease of expression, however, we use "patient" to include the person examined by a nontreating physician.

The principle with respect to the testimony of an attending physician was set out in *Yellow Cab v. Henderson,* 183 Md. 546, 552-553, 39 A. 2d 546 (1944).[3] The question of the admissibility of the testimony of a nontreating physician, left open in *Yellow Cab,* was decided in *Parker v. State,* 189 Md. 244, 249, 55 A. 2d 784 (1947), which declared it to be inadmissible. That rule has been consistently recognized from *Parker* to *Candella. Francies v. Debaugh,* 194 Md. 448, 457, 71 A. 2d 455 (1950); *Adams v. Benson,* 208 Md. 261, 269, 117 A. 2d 881 (1955), the court noting: "[The Parker] decision has never been overruled"; *Wolfinger v. Frey,* 223 Md. 184, 190, 162 A. 2d 745 (1960); *Connor v. State,* 225 Md. 543, 557, 171 A. 2d 699, *cert. denied,* 368 U. S. 906 (1961); *Penn Fruit, Inc. v. Clark,* 256 Md. 135, 140-141, 259 A. 2d 512 (1969). *See Hodge v. Duley,* 22 Md. App. 392, 394, 323 A. 2d 607, *cert. denied,* 272 Md. 743 (1974).

We have been aware of the criticism aimed at the restrictive rule of *Parker. Candella v. Subsequent Injury Fund, supra,* 277 Md. at 124. We have noticed that courts in other jurisdictions have taken a more liberal view. In *Adams v. Benson, supra,* 208 Md. at 267, after observing that "[t]he majority of the American courts have held that descriptive statements of present pain or symptoms made to a doctor employed only to testify do not qualify for admission under the exception to the hearsay rule for statements of bodily condition", we said:

> "On the other hand, some courts have adopted the rule that expert witnesses may testify to the information upon which they have relied in reaching their conclusions, and this practice permits a medical doctor to give a general account not only of the facts observed but also of the history of the case, including the patient's statements as to

---

3. The seminal case in this jurisdiction on the matter seems to be Sellman v. Wheeler decided in 1902. It was designated by the court not to be reported, but appears under the heading "Memoranda" in 95 Md. 751 and in 54 A. 512. *Sellman* was cited with approval in Yellow Cab Co. v. Henderson, 183 Md. 546, 552, 39 A. 2d 546 (1944) and in Adams v. Benson, 208 Md. 261, 266, 117 A. 2d 881 (1955).

injury, past symptoms, and present feelings at the time of the examination. These courts have explained that the patient's statements, when presented for this purpose, are considered, not as evidence of the matters stated, and hence not hearsay, but merely as the grounds and reasons for the opinion to be given in evidence by the witness."

But there was no need for us to express a preference between that view and the rule of *Parker* because we found, in the circumstances there, that although the testimony was erroneously admitted under the *Parker* rule, the error was harmless. *Adams v. Benson, supra,* 208 Md. at 269-270. Cases decided subsequent to *Adams,* involving application of of the *Parker* rule, were decided without mention of the less restrictive view noticed in *Adams. Wolfinger v. Frey, supra,* 223 Md. at 190; *Connor v. State, supra,* 225 Md. at 556-557; *Wilhelm v. State Traffic Comm.,* 230 Md. 91, 97, 185 A. 2d 715 (1962); *Rossello v. Friedel,* 243 Md. 234, 241-242, 220 A. 2d 537 (1966); *Penn Fruit, Inc. v. Clark, supra,* at 140-141. It was in *Candella v. Subsequent Injury Fund, supra,* that we next made express comment with respect to the view contrary to *Parker*:

"We recognize that a number of states [4] make a

---

4. For example:

| California: | Willoughby v. Zylstra, 42 P. 2d 685, 686 (1935); Groat v. Walkup Drayage & Warehouse Co., 58 P. 2d 200, 203 (1936); People v. Modesto, 382 P. 2d 33 (1963). |
| Maine: | Johnson v. Bangor Ry. & Electric Co., 131 A. 1, 4 (1925). |
| Massachusetts: | Cronin v. Fitchburg & L. St. Ry. Co., 63 N. E. 335, 335-336 (1902). |
| Nebraska: | Turpin v. State, 281 N. W. 800, 802 (1938). |
| New Jersey: | Tramutola v. Bortone, 304 A. 2d 197, 200 (1973); see New Jersey Rule 63 (12). |
| New Mexico: | Waldroop v. Driver-Miller Plumbing & Heating Corp., 301 P. 2d 521, 524 (1956). |
| Oklahoma: | Yellow Cab Transit Co. v. Bethel, 81 P. 2d 667, 668 (1938); Danner v. Chandler, 236 P. 2d 503, 505 (1951). |
| South Carolina: | Gentry v. Watkins-Carolina Trucking Company, 154 S.E.2d 112, 117 (1967). |

distinction which permits the nontreating physician to present his conclusions and the information, including the history received from the patient, upon which he has relied for those conclusions. In those states, the history is not admitted as substantive evidence, but merely for the nonhearsay purpose of explaining the conclusions reached by the physician." 277 Md. at 124.

Because the circumstances of *Candella* were not appropriate for a determination of whether to adopt the less restrictive rule as to the testimony of a nontreating physician, we adhered to the rule of *Parker* in deciding that case. The case *sub judice,* however, places squarely before us whether we shall continue to adhere to the rule of *Parker.* We have decided that we shall not.

We hold that a physician, who examines a patient, not for the purpose of treatment, but in order to qualify as an expert witness, may present his medical conclusions and the information, including the history and subjective symptoms, received from the patient which provide the basis for the conclusions. The conclusions are admissible as substantive evidence. The statements made by the patient, as narrated by the physician, are admissible, with a qualifying charge to the jury, only as an explanation of the basis of the physician's conclusions and not as proof of the truth of those statements.[5]

---

Washington: Kennedy v. Monroe, 547 P. 2d 899, 901-906 (Wash. App. 1976).

*See*: Annot., 37 A.L.R.2d 778, 823 (1971); Annot., 51 A.L.R.2d 1051, 1073 (1957); Annot., 130 A.L.R. 977, 979 (1941); Annot., 80 A.L.R. 1527, 1528 (1932); Annot., 67 A.L.R. 10, 18 (1930). *See also* C. T. McCormick, *Evidence,* § 267 of the 1954 edition and § 293 of the 1972 edition.

5. We are not prepared at this time to go as far as does Rule 803 (4) of the Federal Rules of Evidence, 28 U.S.C.A. (1975) which became effective 1 July 1975. Under that Rule both the conclusions and the medical history received by a nontreating physician from a patient are admissible as substantive evidence not excluded by the hearsay rule. Rule 803 (4) rejects the distinction between treating and nontreating physicians as a practical matter and a matter of policy. By the same token, we are not as firmly convinced as the Advisory Committee to the Proposed Federal Rules was in

## II

Francis E. Shortall, Jr. incurred injuries to his person and damage to his property in a collision between a car driven by him and a tractor driven by Eugene L. Beahm during the course of Beahm's employment by Atlantic Furniture Products Co., Inc. (Atlantic). Mr. Shortall and his wife, Martha M. Shortall, instituted an *ex delicto* action in the Superior Court of Baltimore City against Beahm, Atlantic and others. A jury rendered verdicts against Beahm and Atlantic. It recompensed Mr. Shortall in the amount of $450,000 and awarded him and his wife $50,000 for loss of consortium. Beahm and Atlantic appealed from the judgments to the Court of Special Appeals. We granted certiorari before decision by that court.

Almost four years after the accident, Beahm and Atlantic employed Dr. G. Lee Russo, a specialist in neurosurgery, certified by the American Board of Neurological Surgeons, to examine Mr. Shortall, not for the purpose of treatment, but to qualify the physician to testify as an expert during the pending litigation with respect to Mr. Shortall's injuries. Dr. Russo testified at the trial at the behest of the Shortalls. His medical conclusions as to the nature and extent of Mr. Shortall's injuries and the subjective symptoms related by Mr. Shortall which served as the basis for the medical conclusions were received in evidence. Beahm and Atlantic claim that the admission of this evidence was erroneous.[6]

---

approving Rule 803 (4), and as the Congress apparently was in enacting legislation adopting it, and as *McCormick* appears to be, that the task of considering the patient's declarations only as an explanation of the basis for an opinion and not as proof of the truth of those declarations is beyond the ability and inclination of the jury. *See* Historical Note to Rule 804 (4); Notes of the Advisory Committee on the Proposed Rules, note to ¶ 803 (4); J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 803 (4) [01] (1975). C. McCormick, *Handbook on the Law of Evidence*, § 298 (E. Cleary ed. 1972).

6. Whether the physician's conclusory opinion was also in part based upon a history, as distinguished from subjective symptoms, is not clear. Certainly, the trial court attempted to exclude any opinion so predicated but the transcript of the proceedings lends doubt that it was successful. In any event, it is of no moment. As we have indicated, note 1, *supra*, there was no distinction under the rule of *Parker* between "history" and subjective symptoms, and we make no distinction between them in the rule we herein adopt.

It is apparent that the narration by Dr. Russo of the subjective symptoms related to him by Mr. Shortall was received as substantive evidence. There was no qualifying instruction with respect thereto. It is also clear that the conclusions of Dr. Russo were reached upon consideration of the subjective symptoms and complaints as to pain related by Mr. Shortall to him and not upon any objective symptoms revealed by the examination. The complaints of Mr. Shortall, which Dr. Russo considered as disabling, were pain behind the left eye or headaches and double vision. Without these subjective symptoms, Dr. Russo said, there would be no disability despite the objective symptom of some numbness in the face.

Under the rule of *Parker*, both the medical conclusions reached by Dr. Russo and his testimony as to the subjective symptoms serving as the basis for the conclusions would have been inadmissible. Under the rule we now adopt, the conclusions would be properly admissible as substantive evidence and testimony as to the subjective symptoms would be admissible for the limited purpose of showing that Mr. Shortall made them and that they were utilized by the physician to reach his conclusions. Because the testimony concerning the subjective symptoms was in fact admitted without an appropriate explanatory instruction, it was before the jury as substantive evidence, and, therefore, its admission was erroneous.[7]

The Shortalls urge that even if the testimony were admitted in error, reversal would not be compelled because of "(1) the appellants' waiver by failure to object or to move to strike and (2) the nonprejudicial nature of such error."

(1)

We find, in the circumstances, that objection to Dr. Russo's testimony was before the court. The transcript of the proceedings reflects that throughout the testimony of

7. We note that the evidence challenged here could have been elicited through a hypothetical question in any event. Rossello v. Friedel, 243 Md. 234, 242, 220 A. 2d 537 (1966), citing Wilhelm v. State Traffic Comm., 230 Md. 91, 97, 185 A. 2d 715 (1962).

the physician, Beahm and Atlantic objected to his testimony, including his narration of the medical history and subjective complaints related by Mr. Shortall. Rule 522 b and d. The Shortalls assert that "appellants on cross-examination thoroughly explored and developed the bases of Dr. Russo's testimony and evaluation of disability but thereafter made no motion to strike." The cross-examination was obviously designed to show that the challenged testimony was in fact based on medical history or subjective complaints. The benefit of objection to inadmissible testimony is not lost by cross-examination on the subject. *Peisner v. State*, 236 Md. 137, 144, 202 A. 2d 585 (1964) *cert. denied* 379 U. S. 1001 (1965).

(2)

As proper challenge was made, we must consider the claim that the error was of a "nonprejudicial nature." "In the interest of the orderly administration of justice, and to avoid useless expense to the state and to litigants in its courts, it has long been settled policy of this court not to reverse for harmless error." *Johnson & Higgins v. Simpson*, 163 Md. 574, 588, 163 A. 832 (1933). This policy was iterated in *Balto. Transit Co. v. Castranda*, 194 Md. 421, 439, 71 A. 2d 442 (1950) and reiterated in *Adams v. Benson*, 208 Md. 261, 269, 117 A. 2d 881 (1955). *See Rippon v. Mercantile-Safe Dep.*, 213 Md. 215, 222, 131 A. 2d 695 (1957). As a corollary of that policy, it is firmly established that the complaining party has the burden of showing prejudice as well as error. *Klingensmith v. Snell Landscape*, 265 Md. 654, 662, 291 A. 2d 56 (1972); *State Roads Comm. v. Kuenne*, 240 Md. 232, 235, 213 A. 2d 567 (1965); *Adams v. Benson, supra*, 208 Md. at 269; *Balto. Transit Co. v. Castranda, supra*, 194 Md. at 439; *Johnson & Higgins v. Simpson, supra*, 163 Md. at 588. If prejudice is shown, this Court will reverse. *Smith v. Jones*, 236 Md. 305, 312, 203 A. 2d 865 (1964); *Houlihan v. McCall*, 197 Md. 130, 140-141, 78 A. 2d 661 (1951); *Heil v. Zahn*, 187 Md. 603, 609, 51 A. 2d 174 (1947). We summed up the policy with respect to the erroneous admission of hearsay evidence in *Kapiloff v. Locke*, 276 Md. 466, 472, 348 A. 2d 697 (1975):

"It is, of course, true that the erroneous admission of evidence will not justify reversal unless the complaining party can show that the admission was prejudicial to him. . . . However, it is also clear that this Court will not hesitate to reverse where hearsay evidence is erroneously admitted and prejudice is shown. . . . The burden of proving prejudice in a *civil* case is on the complaining party . . . ." (citations omitted).

Precise standards for the degree of prejudice required for reversal, have not been, and perhaps cannot be, established. In *Rippon v. Mercantile-Safe Dep., supra,* 213 Md. at 222, we noted that the complaining party made no effort to show "unfairness or harm." In *Hance v. State Roads Comm.,* 221 Md. 164, 176, 156 A. 2d 644 (1959) we observed: "Courts are reluctant to set aside verdicts for errors in the admission or exclusion of evidence unless they cause substantial injustice," so "substantial prejudice" must be shown. In *Rotwein v. Bogart,* 227 Md. 434, 437, 177 A. 2d 258 (1962) we declared that "this Court will not reverse for an error below unless the error 'was both manifestly wrong and substantially injurious' ", quoting 2 *Poe on Pleading and Practice* (Tiffany's ed.) § 287, p. 249. In *State Roads Comm. v. Kuenne, supra,* 240 Md. at 235, we spoke in terms of the error having "a prejudicial effect on the outcome of the case." In *I. W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 11-12, 344 A. 2d 65 (1975), we repeated the "both manifestly wrong and substantially injurious" language of *Rotwein v. Bogart, supra,* and added: "An error which does not affect the outcome of the case is 'harmless error'." In *Dorsey v. State,* 276 Md. 638, 659, 350 A. 2d 665 (1976), we enunciated the rule of harmless error applicable to criminal trials. We traced the history of the effect of an erroneous admission or rejection of evidence. *Id.,* at 646-647. We concluded:

"In modern times, appellate review in all jurisdictions is subject to tenets that a judgment may be affirmed, under certain circumstances, despite errors committed in the conduct of the trial. Such rules in their application represent appellate

judgments that a retrial is not justified if the error has not affected the rights of the parties. These rubrics, of constitutional, statutory or judicial origin, employ a variety of standards for determining whether a particular error is 'harmless,' but all require 'the resolution of whether the error significantly affected the interests of the complaining party'." *Id.*, at 647 citing C. McCormick, *Evidence*, § 183 at 429-430.

The short of it is that what constitutes prejudice warranting reversal in the erroneous admission or rejection of evidence is to be determined on the circumstances of each case.

We have found that the error here was the unqualified admission of Dr. Russo's narration of the subjective symptoms related to him by Mr. Shortall. These symptoms were double vision and pain behind the left eye or persistent headaches. Evidence that Mr. Shortall suffered from these disabilities, however, was properly before the jury apart from the testimony of Dr. Russo. Mr. Shortall, himself, testified about them. Dr. Paul C. Hudson, a neurological surgeon, who first saw Mr. Shortall the day after the accident and continued to follow him and "his difficulties" as a treating physician, discussed in minute detail throughout his extensive testimony the double vision, the pain behind the left eye and the persistent headaches suffered by Mr. Shortall. It is manifest in light of other evidence on the matter, that the testimony of Dr. Russo which was admitted in error did not significantly affect the interests of Beahm and Atlantic. It was not "substantially injurious" so as to have a prejudicial effect on the outcome of the case. In other words, the error was harmless in the circumstances. We hold that it does not warrant reversal. *See Adams v. Benson, supra,* 208 Md. at 269; *Francies v. Debaugh, supra,* 194 Md. at 457-458. *Compare Smith v. Jones, supra,* 236 Md. at 312; *Houlihan v. McCall, supra,* 197 Md. at 140-141; *Heil v. Zahn, supra,* 187 Md. at 609.[8]

---

8. Beahm and Atlantic suggest that the fact that a nontreating physician hired by the defendants testified on behalf of the plaintiffs "is much more prejudicial than if the [physician's] opinion was elicited by a doctor hired

## III

Ramsey Street in the City of Baltimore was a through boulevard running east and west. The accident resulting in this suit occurred on 13 January 1972 about 4:50 p.m. on Ramsey Street in the block between Stricker Street on the east and Parrish Street on the west. At this point Ramsey Street was 40 feet wide — two lanes 20 feet wide divided by a center line. Parking was permitted on both the north side and the south side of the street, and there were cars parked along the north and south curbs. The speed limit was 30 miles an hour, although the area was unposted. Weather conditions were wet; it had been raining spasmodically since morning. Mr. Shortall was driving his passenger vehicle west on Ramsey Street. He passed Stricker Street and was approaching Parrish Street. Beahm, an employee of Atlantic, acting within the scope of his employment, was driving a 1970 Diesel tractor eastbound on Ramsey Street. The vehicles collided about 85 feet west of the curb line of Stricker Street. The point of impact was in the westbound lane, 6 feet north of the center line. Mr. Shortall's car left straight skid marks beginning 45 feet west of the curb line of Stricker Street and running 38 feet. Beahm's tractor left skid marks which started 10 feet west of the east curb line of Parrish Street. They ran straight for 44 feet, then veered to the left into the westbound lane and continued 39 feet to the point of impact. The tractor traveled 18 feet after the impact. Mr. Shortall's car stopped at the point of impact.

Beahm's version of what occurred was adduced by the Shortalls from a statement given by Beahm to an investigating police officer shortly after the accident and through his testimony at trial as an adverse witness. The substance of it was that the street was wet from a fine mist

by plaintiffs." Under the rule we now embrace, we see no sound reason why a nontreating physician may not testify on behalf of a party adverse to the party who employed him. The weight of his testimony is, of course, for the trier of fact. In any event, that Dr. Russo was employed by Beahm and Atlantic and testified on behalf of the Shortalls was considered by us in determining that the error in admitting Dr. Russo's testimony was harmless and was found, in light of the evidence properly admitted, not to render the error prejudicial.

of rain. His speed was about 20 miles an hour. A car pulled out in front of him from a parking space on the south side of Ramsey Street. He blew his horn, tapped the brakes, then applied them "full force." The tractor skidded, striking Mr. Shortall's car. He believed the front wheels of the tractor locked. The location of the car that pulled from the curb, where Beahm was when he first saw it and the point of impact as given by Beahm in his statement, in his deposition, and at trial did not jibe.[9]

Mr. Shortall testified that when he first saw the tractor it was half way between Gilmore Street, which intersects Ramsey Street west of Parrish Street, and Parrish Street. The tractor swerved slightly. Shortall thought the tractor driver was attempting to avoid a "dog or a child running out." Shortall applied his brakes. The tractor driver, Shortall estimated, applied his brakes at about or slightly before the intersection of Parrish and Ramsey Streets, and the tractor went into a skid into the westbound lane with its front wheels in a "locked position." There was an interval of several seconds between the time that the Shortall car came to a full stop and the time of the impact. Shortall said that he did not see a car pull from the curb, or any traffic eastbound on Ramsey Street in front of the tractor. He admitted, however, that the focus of his attention was primarily on the tractor.

Owen Ray Payton was the driver of the car which pulled from the curb. According to portions of his deposition placed in evidence and his testimony at trial, he was parked facing east on the south side of Ramsey Street about two or three car lengths west of Stricker Street. Because the windows were "fogged up" he opened the car door "and looked all the way back to Gilmor Street for oncoming traffic." As it was raining hard, he shut the door and "cracked" the window. He waited three or four minutes before he pulled out after

---

9. Beahm had not finished testifying when court recessed for the weekend. Although instructed to return the following Monday to resume his testimony, Beahm did not appear. A bench warrant was issued but he was not located until the trial had been completed. He was adjudged in contempt of court. In his absence, portions of his deposition testimony were introduced.

looking to the rear through the slightly lowered window. He was going to make a left turn onto Stricker Street and stopped his car at an angle with the front end extending about two or three feet into the westbound lane on Ramsey Street. He saw a car approaching westbound on Ramsey Street (Mr. Shortall's car). Payton was going to "shoot out" and make a quick left hand turn in front of the car but decided to wait. Just as the car passed him, he heard a "real loud" sound behind him, glanced back and saw the tractor at, or maybe two car lengths past, the intersection of Parrish and Ramsey Streets. He could not judge the distance in feet because "when you're nervous like that and your life [is] in danger, it is just a split second.". As soon as the westbound motorist passed, Payton made a left turn onto Stricker Street and did not either hear or see the accident.

Mr. and Mrs. John F. Kramer were at the scene when the accident occurred. A statement Mrs. Kramer gave the police was put in evidence by the Shortalls. She had parked her car in front of 1505 Ramsey Street and was walking west on the south side of Ramsey Street a few steps from her car when she heard tires screeching. She saw a blue convertible pulling out from the curb, on the south side of Ramsey Street in front of a skidding truck. "Apparently the truck was attempting to avoid striking the car pulling from the curb." Mr. and Mrs. Kramer were called by Beahm and Atlantic to testify at the trial. Mrs. Kramer's testimony was not at material variance with her statement and Mr. Kramer's testimony was in substance the same as that of his wife.

## IV

Beahm and Atlantic present three contentions which go to the determination of the jury that their negligence was the proximate cause of the accident. They claim that the court erred:

(1) "by allowing Payton, over objection, to give an estimate that the speed of [the tractor, driven by Beahm] was forty miles per hour";

(2) "by reading to the jury Article 66½, Section

11-301, and in explaining to the jury the burden of proof borne by any person who violates that section";

(3) "in not granting [the] motion for directed verdict [made by Beahm and Atlantic] at the conclusion of the entire case".

### (1)

On cross-examination of Payton by the Shortalls, there came into evidence, after four attempts to obtain an answer which the court found admissible, Payton's estimate of the speed of the tractor. He was asked, over objection: "When you first saw him, can you tell us what, based on your driving experience, what his speed was?" Payton replied: "About forty miles an hour, skidding." Motion to strike the answer was denied.

As we understand appellants' argument, they claim that the challenged testimony should have been excluded because (a) it was not established that Payton was a licensed driver either at the time of the accident or at the time of trial; (b) it was not shown that Payton had gained experience in estimating the speed of moving vehicles operated by others; and (c) even if Payton were an "expert", he did not have adequate opportunity in the circumstances to judge the speed of the tractor.

### (a)

It is established that a non-expert witness may testify as to the speed of a vehicle in terms relating to fast or slow, but a witness may not fix the rate of speed as so much per hour without having shown some special knowledge which would enable him to speak as an expert. *State v. United Rwys. Co.*, 139 Md. 306, 309, 115 A. 109 (1921). In *People's Drug Stores v. Windham*, 178 Md. 172, 182, 12 A. 2d 532 (1940) we defined an expert:

"[I]n using the term 'expert' in *State v. United Rys. Co., supra*, the court did not have in mind only a person who had specially trained himself by study

and observation to estimate the speed of moving objects, but rather any one who had, by actual personal experience, become familiar with the operation and speed of automobiles, whether his knowledge was gained through the personal operation of automobiles for business, or for pleasure, or as a traffic officer, or through experience in estimating the speed of moving automobiles operated by others . . . , for in the operation of an automobile over public highways for any purpose the driver must, to obey the traffic laws, constantly note its speed, and as well the speed of other automobiles which pass it, or which it passes, in terms of miles per hour, and so gain experience which should qualify him to estimate in such terms the speed of a moving automobile which he has observed. And ordinarily such evidence is not only the best but the only evidence available.

Such an estimate is necessarily approximate and not exact, for without mechanical aids it is manifestly impossible for any one, expert or non-expert, to estimate precisely the speed of a moving object, and that fact is assumed by every one possessing ordinary common sense."

In *Miller v. Graff,* 196 Md. 609, 617, 78 A. 2d 220 (1951), we said:

"But by 'expert' we do not mean only a person who has specially trained himself to estimate the speed of automobiles, but rather any person who has become familiar with the operation and speed of automobiles by personal experience."

In *Boyd v. State,* 22 Md. App. 539, 323 A. 2d 684, *cert. denied,* 272 Md. 738 (1974), the Court of Special Appeals said, at 547: "That an experienced licensed operator of an automobile may give such an opinion was made abundantly clear by Judge Offutt, writing for the Court (178 Md. at p. 182)." There immediately followed the quotation from *People's Drug Stores v. Windham supra,* we set out above.

On the basis of this statement, Beahm and Atlantic urge that a person must be licensed to operate an automobile in order to testify as an "expert" regarding the speed of an automobile in terms of miles per hour. Of course, "an experienced licensed operator of an automobile", as the Court of Special Appeals stated, may give such testimony, but it does not follow that a person must be currently licensed to so testify. Holding such a license may, in certain circumstances, add weight to the testimony of such a witness, but, as is manifest from the opinions of this Court, it is not a prerequisite of his competency to testify. In any event, as the Shortalls point out, the police report received in evidence indicated that Payton had been issued a Maryland operator's license and that it had no restrictions. The argument concerning the license has no merit.

(b)

During cross-examination of Payton the court observed that Payton's driving experience had not been shown. It was elicited from Payton that he had obtained a driver's license at age 16, and that he was 28 years old at the time of the accident, so that he had been driving for about 12 years, but he had been in prison from 1969 until about two and a half months before the accident. He had served six months in 1961 at age nineteen and in 1964 was convicted of assault and incarcerated for three years. After the accident and prior to the trial, he was again imprisoned, this incarceration ending on the third day of the trial of the case *sub judice*, that is on 26 November 1975. Beahm and Atlantic claim that Payton's opportunity to become familiar with the operation and speed of automobiles through personal operation or through experience in estimating the speed of moving automobiles operated by others had been restricted by those lengthy stays in prison.

The determination of whether a witness is qualified as an expert witness is generally within the discretion of the trial court, and will not be overturned unless the discretion has been manifestly abused to the prejudice of the complaining party. *I. W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 12-15,

344 A. 2d 65 (1975). In *Stickell v. City of Baltimore*, 252 Md. 464, 471, 250 A. 2d 541 (1969), we observed: "It is well established that a person must demonstrate a minimal amount of competence or 'expertise' on the subject on which he is allegedly an expert in order to be qualified to testify as an expert witness." We see no abuse of discretion here.

(c)

Appellants claim that even if Payton were proved to be an expert capable of giving an estimate of speed in miles per hour, the trial judge erred in not excluding the challenged testimony "because Payton manifestly did not have an adequate opportunity to judge the speed of the tractor."

We said in *Lambert v. State*, 197 Md. 22, 26, 78 A. 2d 378 (1951) that "[b]y 'observation' we mean that direction of attention which is the source of impressions, and thus of knowledge." An observation is sufficient if "the witness had an opportunity of personal observation and got some impressions from this observation." *Id.*, at 26. An estimate of speed "is but a mental impression formed instantly from the observation of conditions which may not be exactly reproduced and which ordinarily disappear instantly." *People's Drug Stores v. Windham, supra,* 178 Md. at 179. It has been held that an almost instantaneous observation is sufficient to qualify a witness to testify as to the speed of an automobile, the short duration of the observation going only to the weight of the evidence. *Tefke v. State*, 6 Md. App. 139, 145, 250 A. 2d 299, *cert. denied*, 255 Md. 744 (1969). *See Raines v. Boltes*, 258 Md. 325, 329, 265 A. 2d 741 (1970); *Mulligan v. Pruitt*, 244 Md. 338, 334-345, 223 A. 2d 574 (1966); *Jackson v. Leach*, 160 Md. 139, 141-142, 152 A. 813 (1931).

Payton's observation of the tractor was characterized as "a split second" or "a hundredth of a second", made when he "glanced back real fast." But he also testified that when he had stopped to make the turn onto Stricker Street he saw the tractor, "maybe a car length past Parrish Street", coming east on Ramsey Street. He continued to observe it "because you know, the noise made me like go in a trance,

watching it. I was watching it, except it kept coming and in my mind, playing it back, I can remember thinking you better get out of here, now because my life is in danger." He continued to watch it. When he first saw the tractor he saw "the wheels turn, . . . turn a certain way that he must have had his brakes locked, because he well wouldn't turn, he was skidding, his wheels wasn't turning, they were like that, they kept coming, you know."

"[T]he admissibility of expert testimony generally is within the discretion of the trial court." *Franceschina v. Hope,* 267 Md. 632, 636, 298 A. 2d 400 (1973), and cases therein cited. "The party challenging on appeal the ruling of the trial court in regard to the admissiblity of expert testimony has the burden of showing an abuse of the trial court's discretion." *Id.,* at 636-637. We are not persuaded that Payton's testimony as to the speed of the tractor was so impossible as to be worthless. Its probative value may be questionable, but its admission did not abuse the exercise of sound judicial discretion.

(2)

The judge read to the jury parts of Maryland Code (1957, 1972 Cum. Supp.) Art. 66½, § 11-301 pertaining to driving to the right of the center of a roadway and all of § 11-302 requiring that drivers of vehicles proceeding in opposite directions shall pass each other to the right and that "upon roadways having width for not more than one line of traffic in each direction each driver shall give to the other at least one half of the main traveled portion of the roadway as nearly as possible." He then discussed the case law pertaining to the statutes and concluded:

> "In other words, if a driver of a motor vehicle drives from the right hand side of the road or street to the left hand side of the road, this is deemed to be prima facie evidence of negligence, where the violation directly and proximately causes an injury resulting in an accident, resulting in an injury and this places the burden upon that driver then to

show that he was justified in crossing over to the
left hand side of the roadway or street."

The judge was correct in his understanding of the case law
of this State. *See Virginia Freight v. Montgomery,* 256 Md.
221, 260 A. 2d 59 (1969); *Boyd v. Simpler,* 222 Md. 126, 158 A.
2d 666 (1960); *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354,
121 A. 2d 188 (1956). Appellants urge that the law which the
judge read to the jury applies only to vehicles driven across
the center of the roadway and not to vehicles which skidded
across the center, but we do not believe that the statute can
be so restricted. Skidding may result from negligent driving.
*See Larkins v. Baltimore Transit,* 249 Md. 305, 310, 239 A. 2d
566 (1968).

In considering the propriety of the judge's instructions, we
consider the charge as a whole. *Jones v. Federal Paper Bd.
Co.,* 252 Md. 475, 484, 250 A. 2d 653 (1969). Immediately
preceding the charge concerning driving to the right of
center, the judge discussed negligence fully. He said that
skidding "[s]tanding alone [was] not evidence of negligence,
but if there is other evidence from which you can find
negligence, then you can consider not only the other evidence
but also the skidding as being evidence of negligence." He
went on to explain that the "law also, in terms of any
skidding which is an emergency situation, has a different
standard," and discussed that standard.

On the factual issues clearly posed by the evidence
adduced, which tended to show that Beahm's negligence was
the direct and proximate cause of the collision, we see no
error in the challenged instructions. *See Wolfe v. State,* 173
Md. 103, 194 A. 832 (1937).

(3)

Beahm and Atlantic made a motion for a directed verdict
at the close of all the evidence. In *Curley v. General Valet
Service,* 270 Md. 248, 264, 311 A. 2d 231 (1973), we restated
our position with respect to the submission of the question
of negligence to the jury in these terms:

"We said in *Fowler v. Smith,* 240 Md. 240,
246-247, 213 A. 2d 549 (1965) that negligence is a

relative term, to be decided upon the facts of each particular case; that ordinarily it is a question of fact to be determined by the jury; that before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn; that 'Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury;' that the rule requires submission of the case to the jury if there be any evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence being left to the jury; that to meet the test of legal sufficiency, the party having the burden of proving another party guilty of negligence cannot sustain this burden 'by offering a mere scintilla of evidence amounting to no more than a surmise, possibility, or conjecture, that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value.' To like effect, see *Richardson v. Rice*, 256 Md. 19, 259 A. 2d 251 (1969); *Williams Construction Co. v. Construction Equipment, Inc.*, 253 Md. 60, 251 A. 2d 864 (1969); *Snowhite v. State*, [Use of Tennant, 243 Md. 291, 221 A. 2d 342 (1966)]. The test of legal sufficiency, we have held, 'is whether the evidence serves to prove a fact or permits an inference of fact that could enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the right of the plaintiff to recover.' *Stein v. Overlook Joint Venture*, 246 Md. 75, 81, 277 A. 2d 226, 230 (1966)."

Applying the principles expressed in *Curley*, it is clear that the matter of Beahm's negligence was for the jury to decide. We cannot say that there was no legally sufficient evidence tending to prove that Beahm was negligent in crossing over

the center line of the highway and striking the car driven by Mr. Shortall. On the evidence adduced, considered in light of the rule regarding a motion for a directed verdict, it was for the jury to decide, for example, whether an actual emergency confronted Beahm, or whether he was driving at an excessive speed, or whether he reacted improperly in the circumstances or whether he failed to have his tractor under proper control. *Compare Glass v. Bair,* 233 Md. 194, 195 A. 2d 680 (1963). There is no suggestion that the trial court was wrong in instructing the jury that Mr. Shortall was not guilty of contributory negligence.

We hold that as to the negligence of Beahm and Atlantic, the trial judge did not err in denying their motion for a directed verdict.

## V

The declaration filed by the Shortalls also named Ryder Truck Rental, Inc. (Ryder) and Payton as defendants.

Ryder was held to be not liable prior to trial by the grant of its motion for summary judgment. At the close of all the evidence, in addition to denying the motions for a directed verdict of Beahm and Atlantic, the court denied that of Payton. It granted motions by the Shortalls that the jury be instructed that Mr. Shortall was not guilty of contributory negligence and that Beahm was acting as agent for Atlantic. It denied the Shortalls' motion for a directed verdict made on the ground that Beahm and Atlantic were negligent as a matter of law. The jury rendered verdicts against the Shortalls and in favor of Payton on both counts, and, as we have indicated, against Beahm and Atlantic under the first count in favor of Mr. Shortall for $450,000 and under the second count in favor of Mr. and Mrs. Shortall for $50,000. Upon denial of motions by Beahm and Atlantic for judgment n.o.v. or a new trial, judgments absolute on the verdicts were entered — for $450,000 with interest and costs under count one in favor of Mr. Shortall and against Beahm and Atlantic; for $50,000 with interest and costs under count two in favor of Mr. and Mrs. Shortall and against Beahm and Atlantic; for costs under both counts in favor of Payton and

against the Shortalls. Beahm and Atlantic appealed from the judgments against them. They also appealed from the judgment in favor of Payton against the Shortalls. The Shortalls did not appeal therefrom. The judgment in favor of Ryder for costs was not challenged. Beahm and Atlantic did not contest the judgment in favor of Payton in their brief, Maryland Rule 831 c 2 and 5, or in oral argument before us, *but see* Rule 846 f. Any opposition to it must be regarded as waived. *Ricker v. Abrams*, 263 Md. 509, 516-517, 283 A. 2d 583 (1971).

All judgments are affirmed.

## VI

A motion to dismiss the appeal as to Payton was included in his brief pursuant to Rule 836 d. He gave as reasons that the brief of Beahm and Atlantic did not question the propriety of the judgment in his favor and that the Shortalls themselves did not note an appeal from that judgment. In the circumstances, the reasons given are not within the contemplation of Rule 835 a for the dismissal of an appeal, and, in fact, none of the six reasons prescribed by the Rules applies in the circumstances to permit the dismissal of the appeal as to Payton. To clear the record, we deny the motion.

*Judgments affirmed; appellants to pay costs.*